FORNARIS *v.* RIDGE TOOL CO. ET AL.

No. 541. Decided November 23, 1970*

PER CURIAM.

In 1964 by Act No. 75, the Legislature of Puerto Rico enacted the Dealer's Contract Law which in effect provides that a Puerto Rican dealer's contract with a manufacturer, regardless of any provisions for termination, is renewable indefinitely at the option of the local dealer unless the manufacturer has "just cause" to terminate. Section 1 (d) defines "just cause" as "nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." If a manufacturer terminates for any other reason he is liable for substantial damages.

This cause was brought by a dealer in a Puerto Rican court for damages for breach of his distributorship contract against Ridge Tool Co., an appellee. It was

*Together with No. 543, *Puerto Rico* v. *Ridge Tool Co. et al.*

42

removed to the Federal District Court on the basis of diversity of citizenship. That court denied the motion to dismiss which claimed that the Dealer's Contract Law upon which the complaint was based was unconstitutional. The Court of Appeals allowed an interlocutory appeal and held the Dealer's Contract Law unconstitutional. 423 F. 2d 563.[1]

The relations of the federal courts to Puerto Rico have often raised delicate problems. It is a Spanish-speaking Commonwealth with a set of laws still impregnated with the Spanish tradition. Federal courts, reversing Puerto

---

[1] Appellants invoked 28 U. S. C. § 1254 (2) as the authority for these appeals. That provision provides that a judgment in the Court of Appeals may be brought here "[b]y appeal by a party relying on a *State* statute held by a court of appeals to be invalid as repugnant to the Constitution . . . ." But a Puerto Rican statute is not a "*State* statute" within § 1254 (2). (Emphasis supplied.) It is true that statutes enacted in 1961 require that this Court treat the Puerto Rican courts as the equivalent of state courts for purposes of appeal and certiorari. It is expressly provided in 75 Stat. 417, 28 U. S. C. § 1258, that "[f]inal judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico" may be reviewed by this Court by appeal, or by writ of certiorari, in the situations where that route is available for review of the judgments of the highest courts of the States. Significantly, however, no parallel provision was added to § 1254 (2) to permit appeals here from the courts of appeals by a party relying on a Puerto Rican statute. Whether the omission was by accident or by design, our practice of strict construction of statutes authorizing appeals dictates that we not give an expansive interpretation to the word "State." We see no merit in the argument that we have already done so in our Rule 61 defining "state court" to include the Puerto Rican Supreme Court and "law and statutes of a state" to include "the law and statutes of the Commonwealth of Puerto Rico." That rule was adopted only to implement 28 U. S. C. § 1258 dealing with review by appeal or certiorari of final judgments of the Supreme Court of Puerto Rico. We therefore hold that the appeals are improper and they are dismissed, and accordingly we treat the jurisdictional statements as petitions for writs of certiorari and grant them on that basis. 28 U. S. C. § 2103; *El Paso* v. *Simmons*, 379 U. S. 497, 501–503.

Rican courts, were inclined to construe Puerto Rican laws in the Anglo-Saxon tradition which often left little room for the overtones of Spanish culture. Out of that experience grew a pronouncement by this Court that a Puerto Rican court should not be overruled on its construction of local law unless it could be said to be "inescapably wrong." See Bonet v. Texas Co., 308 U. S. 463, 471.

The question presented here is akin to that question, for we deal with a rather vague Puerto Rican law that the Supreme Court of Puerto Rico has not authoritatively construed.[2] Only last Term in Reetz v. Bozanich, 397 U. S. 82, we held that a three-judge federal court should not have proceeded to strike down an Alaska law which, if construed by the Alaska Supreme Court, might be so confined as not to have any constitutional infirmity. We said, "A state court decision here . . . could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship." Id., at 86–87.

In this cause the Court of Appeals held that "just cause" placed substantial liability on a manufacturer who had contracts that he could have terminated without liability prior to the new statute. This retrospective impact, the court held, violated "the due process clause of the federal constitution"—without saying whether

[2] In McGregor-Doniger, Inc. v. Superior Court, decided March 17, 1970, the Supreme Court referred briefly to the "just cause" provision in the Act:

"It is apparent from the pleadings that the cancellation of the contract in this case 'due to changes we are now making in our sales representation throughout the world' is cause to cancel it, since in the contract it was agreed that it could be cancelled by 30 days' written notice. But it is also clear that such cause or reason is not the 'just cause' which permits the cancellation of a distributorship contract in accordance with the provisions of Law #75, supra."

the Fifth or the Fourteenth Amendment was involved.[3]
423 F. 2d, at 566–567.

Whether the Supreme Court of Puerto Rico would give the same broad sweep to "just cause" as did the Court of Appeals is something we do not know. It is conceivable that "just cause" might be judicially confined to a more narrow ambit which would avoid all constitutional questions. We therefore reverse and direct the Court of Appeals to remand the cases to the District Court with instructions to hold its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question[4] in light of the federal claims. See *England* v. *Medical Examiners*, 375 U. S. 411, 420.

*It is so ordered.*

---

[3] Art. II, § 7, of the Constitution of Puerto Rico provides that "[n]o person shall be deprived of his liberty or property without due process of law," "life" being excluded because § 7 abolishes the death penalty. That Constitution was approved by Congress. See H. R. Rep. No. 1832, 82d Cong., 2d Sess.; H. R. Rep. No. 2350, 82d Cong., 2d Sess.; S. Rep. No. 1720, 82d Cong., 2d Sess.

[4] Under Puerto Rico's laws its courts have broad powers "to declare rights, status, and other legal relations whether or not further relief is or could be claimed." P. R. Laws Ann., Tit. 32, c. 247, § 2991. That form of remedy reaches a person "interested in" a contract or whose rights are "affected by any statute . . . contract or franchise." *Id.*, § 2992.