Porter DIMERY, individually, and as next
friend of Ronnell Dimery, a minor,
et al., Plaintiffs,

v.

DEPARTMENT OF SOCIAL SERVICES
OF the STATE OF IOWA et al.,
Defendants.

Civ. No. 8-2386-C-1.

United States District Court,
S. D. Iowa, C. D.

June 13, 1972.

Robert C. Oberbillig and Kent Willis,
Des Moines, Iowa, for plaintiffs.

Lorna Williams, Asst. Atty. Gen.,
State of Iowa, for defendants.

Before VAN OOSTERHOUT, Senior
Circuit Judge, STEPHENSON, Circuit
Judge, and HANSON, District Chief
Judge.

**1182**

MEMORANDUM ORDER

STEPHENSON, Circuit Judge.

This case was last before us in October 1969. At that time we entered an order holding invalid and unconstitutional on its face § 249A.4 of Iowa's assistance program for the medically needy. I.C.A. § 249A et seq. We concluded that the lack of standards defining the limits of the power vested by that statute in the Department of Social Services left the Department at large in the allocation of medical assistance benefits, with its decisions unguided by any primary standards by which it could effectuate the legislative purpose declared in the statutes. The Department's unrestrained power to determine "to whom and under what circumstances the statute should apply," we found, constituted a complete abdication of legislative responsibility which, under the controlling Iowa decisional law, must be held invalid. 320 F.Supp. 1125, 1130–1131. We did not then reach the federal issues presented by the complaint.

Subsequent to our 1969 judgment, the Supreme Court decided Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed. 2d 68 (1970). That case presented a constitutional attack, on State and federal grounds, upon an Alaska statute restricting commercial fishing licenses. The Court held that the three-judge court there convened should not have proceeded to strike down the Alaska statute since, if construed by the Alaska Supreme Court, it might be so confined as not to have any constitutional infirmity. In so doing, the Court noted, "A state court decision here . . . could conceivably avoid any decision under the Fourteenth Amendment and would avoid any possible irritant in the federal-state relationship." *Id.,* at 86–87, 90 S.Ct., at 790. See Fornaris v. Ridge Tool Co., 400 U.S. 41, 43, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970). The Court, without opinion, vacated and remanded our judgment for reconsideration in light of its decision in *Reetz,* 398 U.S.

322, 90 S.Ct. 1871, 26 L.Ed.2d 265 (1970).

Since remand the posture of this case has undergone some changes. Iowa repealed § 249A and enacted new legislation effective July 1, 1970. The parties agree that this intervening legislation renders moot the delegability issue. It also has been agreed that the new legislation effectively removes from the case any unresolved questions of State law which, under *Reetz* and its decisional precursors, only an Iowa court could authoritatively construe. An amended complaint has been filed in which the plaintiff seeks to renew his massive federal constitutional attack which initially gave rise to this long dormant lawsuit. The case is now before us on a defense motion for summary judgment.

We are asked to decide whether Iowa may, consistently with the Equal Protection Clause of the Fourteenth Amendment, adopt eligibility standards that (a) exclude from benefits under its federally assisted Aid to Disabled Persons program those of the disabled who have not attained the age of 18 years, and (b) deny benefits under its federally funded Aid to Dependent Children and Medical Assistance programs to those of the financially and medically needy who are not deprived of parental support and care.

I

The relevant provisions of the pertinent statutes may be summarized as follows.

(1) *Aid to Disabled Persons.* I.C.A. § 241A et seq., defines the scope and extent of benefits to be made available to the disabled. Federal contributions to the program are authorized by 42 U.S.C. § 1381 et seq. I.C.A. § 241A.2(3) excludes from benefits under this program those of the disabled who are less than 18 years of age.

(2) *Aid to Families with Dependent Children.* I.C.A. § 239 et seq., governs Iowa's Aid to Dependent Children program. Pursuant to the Act of July 25,

1962, Pub.L. 87–543, § 104(a) (3) (B), 76 Stat. 172, this plan now is to be known as the Aid to Families with Dependent Children program (AFDC). Federal participation is provided for through the provisions of 42 U.S.C. § 601 et seq. Under I.C.A. § 239.1(3), those of the needy and otherwise eligible who have not been "deprived of parental support and care by reason of death, continued absence from home, or physical or mental incapacity or unfitness of either parent" are excluded from AFDC benefits.

(3) *Medical Assistance.* I.C.A. § 249A et seq., embodies the scope of assistance to be made available to those who are unable to procure needed medical attention. The Federal government assists Iowa and other participating States in providing medical care for the needy by helping to defray the cost of the care provided pursuant to the provisions of 42 U.S.C. § 1396 et seq. Under this program Iowa must provide medical assistance benefits to those receiving monies under any one of the four State-administered federal categorical assistance programs, namely, Old Age Assistance, 42 U.S.C. § 301 et seq.; Aid to Families with Dependent Children, 42 U.S.C. § 601 et seq.; Aid to the Blind, 42 U.S.C. § 1201 et seq.; and Aid for the Permanently and Totally Disabled, 42 U.S.C. § 1351 et seq. See generally 42 U.S.C. § 1396a(a) (10). Under § 1396a(a) (10) (B) (i), medical assistance benefits may be extended to those of the medically needy who, but for the fact that their income and resources exceed the appropriate eligibility limits, are eligible to receive categorical assistance. Iowa has elected to extend benefits beyond the required class, but only if funds are available so to do. See I.C.A. § 249A.3(2). The Commissioner of the Department of Social Services has testified by affidavit that budgetary constraints do not permit the payment of medical assistance benefits to persons other than those "who are currently receiving public welfare in one of the 'categorical programs.'"

The plaintiff's minor son is not eligible to receive benefits as a disabled person because he is less than 18 years of age. He has been denied AFDC benefits because he is not one who has been deprived of parental support and care. Since the Medical Assistance program is, with exceptions not pertinent to this case, available only to those who receive money benefits under any one of the four categorical assistance programs, if, as here, an applicant is declared ineligible to receive categorical aid, he is likewise ineligible to receive medical assistance. It is this statutory interaction that supplies the crux of the instant case.

II

It is argued that the classificatory schemes under attack invidiously discriminate against a small minority of the poor, *viz.,* those of the disabled who are less than 18 years of age and those of the financially and medically needy who are not deprived of parental support and care. This is so, the argument goes, because these classifying traits are not rationally related to the purposes of the assistance statutes, but are imposed for the sole purpose of conserving State funds. Compare Note, 84 Harvard Law Review 1, 60, 68 (1970). Underpinning this argument is the novel notion that the only constitutionally permissible distinction in the area of financial and medical assistance relates to whether the applicant can bear the costs of the need he seeks. If he cannot, the claim is made that the State must supply the requested aid. Phrased another way, we are asked to hold that once a State decides to participate in a categorical assistance program, it is arbitrary and discriminatory to provide benefits for less than all of the potentially eligible.

III

■■ It has been held and appears to be entirely settled that State classificatory schemes in the area of economics and social welfare will not be judicially excised unless the scheme is so palpably

arbitrary that the court of decision cannot conceive of any constitutionally permissible objective to which it might be rationally related. Dandridge v. Williams, 397 U.S. 471, 485, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970). "So long as its judgments are rational, and not invidious, the legislature's efforts to tackle the problems of the poor and the needy are not subject to a constitutional straitjacket." Jefferson v. Hackney, 406 U.S. 535, 546, 92 S.Ct. 1724, 1731, 32 L.Ed.2d 285 (1972). Thus, the standard of judicial review in such a case as this is whether any state of facts reasonably may be conceived to justify the statutory classification. McGowan v. Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961).

It is perhaps well to recall at the outset that the compendium of Iowa legislation drawn into question by this lawsuit is only one aspect of a comprehensive legislative program for meeting the multitude of requests for welfare and medical assistance. 320 F.Supp., at 1131 n. 4. Indeed, this record reflects that the plaintiff's minor son has been receiving public medical assistance, although the claim is made that such assistance has been inadequate.

■ It is true that the AFDC and Aid to Disabled Persons programs are structured and funded to serve all who need help of a particular kind or because of a specific situation. However, the demands of the needy impose enormous costs on the State budget and, for this reason, Iowa and other participating States have been forced to tighten the eligibility requirements for State and federal assistance. Regretably, because Congress has, in the main, keyed medical assistance benefits to those who receive categorical assistance, this tightening has narrowed considerably the class of medical assistance recipients. But any constitutional attack bottomed on the theory that a participating State, by decreasing the number of those receiving categorical assistance, has unreasonably constricted the availability of free medical services, has been undercut, and properly so, by Jefferson v. Hackney, *supra*. As 42 U.S.C. § 1396 makes clear, the Medical Assistance program was not intended to create a new class of welfare recipients. Rather, it was clearly designed to meet the medical needs of those receiving aid under one or more of the four categorical assistance programs.

■ Because budgetary constraints made clear that all of the needy could not be adequately helped, it may reasonably have been the purpose and policy of the Iowa legislature to adopt eligibility standards which, instead of providing token benefits to all of the needy, provide full benefits to the poorest and to those least able to bear the hardships of poverty. Thus, it chose to allocate AFDC benefits to those of the needy who, for one of five statutorily prescribed reasons, are deprived of parental support and care. In so doing, it adopted in full the congressional definition of a dependent child. 42 U.S.C. § 606(a). See also King v. Smith, 392 U.S. 309, 313 n. 7, 318 n. 13, 14, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). Surely, it is not irrational for the State to believe that those of the young who are blessed with healthy parents are more adaptable and better able to obtain the basic necessities of life than those who, for whatever reason, are without parental support, care, and influence. Similarly, the legislature seemingly concluded that those of the disabled over the age of 18 years are the least able to cope with the twin tragedies of disability and poverty. Again, Iowa followed precisely the basic outline of disability eligibility established by Congress. 42 U.S.C. § 1355. Given as a major premise the incontestable fact that these welfare programs are unable to serve all of the potentially eligible, it simply cannot be said that no state of facts reasonably can be conceived to sustain the grounds of distinction attacked in this case. Thus, it cannot be said that these distinctions are invidious or palpably arbitrary and denied the plaintiff and those whom he purports to represent the equal protection of the laws.

The legislative purpose which underlay enactment of this welfare legislation must assuredly have been to provide sufficient benefits for as many persons as fiscally possible in each of the four categories of the needy. The classifying traits in suit are rationally related to that purpose.

An order will be entered sustaining the defense motion for summary judgment.