Tomas Torres **CINTRON**, on behalf of Pablo Torres Otero, and all those similarly situated, Plaintiffs,

v.

**STATE BOARD OF EDUCATION** et al., Defendants.

Jairo L. **VEGA**, Represented by Aleja Vega, and Gilberto Melendez, represented by Maria Santiago, on behalf of themselves and all those similarly situated, Plaintiffs,

v.

**STATE BOARD OF EDUCATION** et al., Defendants.

Civ. Nos. 764–72, 946–72.

United States District Court, D. Puerto Rico.

Jan. 28, 1974.

Pedro J. Varela, Legal Service Inc., Hato Rey, P. R., for plaintiffs.

Gilberto Gierbolini, Peter Ortiz, Asst. Sol. Gen., San Juan, P. R., for defendants.

Before COFFIN, Circuit Judge, CANCIO and TOLEDO, District Judges.

OPINION

COFFIN, Circuit Judge.

## I. FACTS

These consolidated civil rights actions were brought by public school students who were punished for violation of certain of the Regulations for Students in the Public School System of the Commonwealth of Puerto Rico, which regulations were promulgated by the Secretary of Education of the Commonwealth of Puerto Rico and approved by the State Board of Education. The students claim that the rules which they are alleged to have violated infringe their rights under the First, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution, and that the procedures under which they were punished do not comport with due process. They seek declaratory and injunctive relief.

The following facts are based upon stipulations entered into by the parties. Plaintiff in No. 764–72 is a junior high school student attending the Student Opportunities Center in Buchanan, Guaynabo, Puerto Rico. On August 16, 1972, he distributed handbills to other students during school hours and while on the grounds of the Center. These handbills called for the participation of students in a subdivision of a political party which advocates Puerto Rican independence. The next day the student was called in for an interview with school officials. At this interview he was informed that he had violated the student regulations and was enjoined from further distribution of the handbills on school grounds. Subsequently, plaintiff was told that he was suspended for five days. Written notice of the suspension was given to him one day later. The notice stated that the suspension was made after an investigation in which the student was found to have violated Article VI and Sections C, F, and H of Article VII of the Regulations for Students in the Public School System.

Plaintiffs in No. 946–72 are two high school students attending the Florencio Rodriguez High School in Coamo, Puerto Rico. On October 11, 1972, the two students participated in a picket line set up outside of their school. During the picketing a loudspeaker was used. After the activity had terminated the school director informed the students that they had violated school regulations. The next day the two were suspended for five days, after a hearing, and notices of the suspension were sent to their homes. The notices said only that the students had participated in a picket line and used a loudspeaker and had thereby "affected the institutional order" of the school. These assertions of wrongdoing appear to track the provisions of Sections B and D of Article VII of the Student Regulations. On October 18, the school director issued a reprimand to one of the plaintiffs because he had distributed political literature in the school. A notice was sent to the student's home stating that he had violated Section F, Article VII, of the Student Regulations.

In both cases temporary restraining orders were issued and a three judge court convened. They have now been consolidated for decision.

## II. PRELIMINARY MATTERS

■■ Defendants suggest that this Court lacks jurisdiction in these civil rights actions because the plaintiffs failed to exhaust state remedies. But there is no indication in the record that the school authorities notified plaintiffs of any right to administrative appeal nor is there any mention of a right to such appeal either in the Regulations or in the notices sent to the plaintiffs. Further, there is considerable doubt that even the Courts of the Commonwealth of Puerto Rico could provide a remedy, see Arraras v. Tribunal Superior, Supreme Court of the Commonwealth of Puerto Rico, Civil No. 0–70–25 (1972). More important, the Court of Appeals in this Circuit has recently signaled its acceptance of the view that

exhaustion is not generally required in Civil Rights Act cases, Title 42, United States Code, Section 1983, at least where, as here, there has been a definitive administrative or institutional determination so as to make the case ripe for adjudication, Raper v. Lucey, 488 F.2d 748 (1st Cir. 1973). See also Carter v. Stanton, 405 U.S. 669, 92 S.Ct. 1232, 31 L.Ed.2d 569 (1971); Wilwording v. Swenson, 404 U.S. 249, 92 S.Ct. 407, 30 L.Ed.2d 418 (1971); Houghton v. Shafer, 392 U.S. 639, 88 S.Ct. 2119, 20 L.Ed.2d 1319 (1968); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967); McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Stevenson v. Board of Education, 426 F.2d 1154 (5th Cir.), cert. denied, 400 U.S. 957, 91 S.Ct. 355, 27 L.Ed.2d 265 (1970). Therefore, we find no bar to our jurisdiction on this basis. See also Marin v. University of Puerto Rico, 346 F.Supp. 470, 476 (D.C.P.R.1972) (Marin I).

■ Defendants also argue that we should abstain from exercising our jurisdiction in these cases. But, "the mere mechanical possibility that a state court decision might make adjudication of the federal claim unnecessary does not itself make abstention appropriate. The high costs attendant upon abstention in terms of delay and frustration of federal claims are matters of equity as well, and are appropriately weighed in the equitable balance." Druker v. Sullivan, 458 F.2d 1272, 1274 (1st Cir. 1972). And, "[b]ecause of the delay caused by applying the abstention doctrine, it is particularly disfavored in First Amendment or civil rights cases. Baggett v. Bullitt, 377 U.S. 360, 379, 84 S.Ct. 1316, 12 L.Ed.2d 377 . . ." Marin v. University of Puerto Rico, supra, 346 F. Supp. at 478. Having fully in mind the admonishment of Fornaris v. Ridge Tool Co., 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970) that federal courts not intervene needlessly in internal Puerto Rican matters, we find that under the circumstances of this case abstention is unwarranted. Unlike the situa-

tion presented in *Fornaris* we deal here with provisions whose constitutional infirmities do not lend themselves to cure by construction and whose continued effectiveness presents a real and pressing threat to freedom of speech, assembly and association.

## III. ISSUES

### A.—Introduction

Plaintiffs make various attacks upon Article VII, Sections B, D, F, and H,[1] including vagueness, overbreadth, and infringement of the rights of freedom of speech, assembly and association. Plaintiffs also attack Article IX of the Regulations, alleging that it denies them due process of law.

Plaintiffs in No. 946–72 also alleged that they have been subjected to cruel and unusual punishment in violation of the Eighth Amendment, but the point was not pursued and is unnecessary to consider. We also believe that Article VI of the Regulations, although mentioned in the notice of disciplinary action furnished to the plaintiff in No. 764–72, is not adequately drawn in issue. All of the proscriptions against political activities which the plaintiff is alleged to have violated are independently set forth in Article VII and the precise practical impact of Article VI, which denies recognition to political organizations, is unclear in this case. While we have grave doubt as to the constitutionality

of this Article, see Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972), we need not rule on the matter at this time.

### B.—Article VII, Sections B and D

These rules[2] absolutely prohibit student picketing on school grounds, and use of loudspeakers within school premises without permission. They also proscribe these activities when carried out outside of school grounds "if they affect the institutional order". Challenge to them is based upon the assertion that they are vague and overbroad, and that they chill and infringe upon the rights of speech, assembly and association.

■ We agree with plaintiffs that the regulations in question, insofar as they impinge upon activity outside of the school premises, are vague and overbroad and violate their First and Fourteenth Amendment rights.[3]

Picketing and using loudspeakers are activities intimately related to the expression of ideas, to the association of persons for concerted action, and to peaceable assembly. These are actions which are protected from governmental interference by the First Amendment to the United States Constitution. As the Supreme Court has recently said: "The right to use a public place for expressive activity may be restricted only for weighty reasons." Grayned v. City of Rockford, 408 U.S. 104, 115, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).

---

1. Although plaintiff in No. 764–72 was notified that he had violated Section C, Article VII, as well as Sections F and H, the parties have stipulated that Section C is not involved in this case.

2. ARTICLE VII—SCHOOL DISCIPLINE

   The following actions constitute violations of the constitutional order and they are punishable with disciplinary sanctions:

   * * * * *

   B. Organizing, instigating, inciting, directing and/or participating in student pickets on school grounds and in the buildings. Disciplinary action will also be applied if said acts are carried out outside the school grounds and buildings if they affect the institutional order.

   * * * * *

   D. Using loud speakers within the school premises without written authorization of the School Principal, or outside the school premises if the institutional order is affected.

3. Because the plaintiffs' actions did not directly call in question the provisos of these two regulations relating to activities within school premises and because, at least as to activities carried on inside of school buildings, it may be that picketing and use of loudspeakers could be found per se disruptive, we intimate no view on that point but restrict our holding to the second proviso of each of the regulations in question.

In the school context "weighty reasons" to restrict the kind of activity involved in this case may include insuring unobstructed ingress and egress from school buildings, and prevention of other action which "materially disrupts classwork or involves substantial disorder or invasion of the rights of others." Tinker v. Des Moines School District, 393 U.S. 503, 513, 89 S.Ct. 733, 740, 21 L.Ed. 2d 731 (1969). But particularly where sensitive First Amendment freedoms are involved, government regulation must not be vague, inhibiting conduct outside of the forbidden zone; and it must not be overbroad, sweeping within its prohibitions protected activity. "Precision of regulation must be the touchstone in an area so closely touching our most precious freedoms." NAACP v. Button, 371 U.S. 415, 438, 83 S.Ct. 328, 340, 9 L.Ed. 2d 405 (1963). A vague regulation also offends other values. It fails to warn a person adequately as to that conduct which is proscribed, and may trap the innocent, and a vague rule invites arbitrary and discriminatory enforcement. Grayned v. City of Rockford, supra, 408 U.S. at 108–109, 92 S.Ct. 2294.

Here the key words are "affect the institutional order". They are closely akin to the phrase "affect the normal functioning" in Article 3C(2)(b) of the General Rules and Regulations for the Students of the University of Puerto Rico,[4] which was struck down in Marin v. University of Puerto Rico (Marin II), 377 F.Supp. 613 (D.C.P.R.1973) (Three judge court Opinion entered in Civil 137–72 on July 18, 1973), because it "too loosely defines the conduct which it seeks to avoid." Although the Commonwealth argues that the word "affect", "afectar" in Spanish, has a definite meaning, and is analogous to the English term "disrupt", this contention was answered in Marin II. We reaffirm the view taken there that the word is too amorphous to be acceptable in this constitutional context. Indeed, the phrase "affect the institutional order" is as a whole even more vague than the phrase "affect the normal functioning" found defective in Marin. It is incapable of precise definition. Similarly, we find the regulations to be overbroad. They are not restricted to the accomplishment of those aims which are the legitimate concern of school officials but encompass as well restrictions upon forms of expression, assembly and association which are clearly protected, see Marin v. University of Puerto Rico, supra.

It is true that the Court in Grayned, supra, eventually upheld the challenged ordinance against vagueness and overbreadth attack. But there the enactment on its face was restricted in operation both temporally and geographically, and further narrowing of its terms had been accomplished inferentially through state court interpretation of related enactments. Similarly, in Marin II, Article 10A(6) could be construed so as to avoid constitutional infirmity because the terms used: "To interrupt, hinder, or disturb the regular tasks of the University or the holding of duly authorized activities", implied limitations in application sufficient to comply with the Grayned standard. But "Interrupt, hinder, or disturb" are terms which are far more precise and narrow than "affect", and "regular tasks of the University or the

---

4. The fact that these cases involve high school and junior high school students does not affect the *standards* to be applied, although it may, under certain circumstances, affect the practical *application* of those standards, cf. Scoville v. Board of Education, 425 F.2d 10, 13 n. 5 (7th Cir. 1970). For example, *Tinker*, itself a high school case, articulated the basic notion that student expression must be protected unless it causes "material disruption", and it may be that younger students are more easily distracted and thus that their classes are more easily materially disrupted. However, since we deal here with problems of vagueness and overbreadth which seem to us to apply with at least the same force to these plaintiffs as they would to college students, we think the ideas expressed in *Marin* are fully viable here.

Similarly, considerations related to the size and location of a particular school may be relevant to application of the legal standards, but do not affect the standards themselves.

holding of duly authorized activities" is much more limited in meaning than "the institutional order". Nor are state court pronouncements of aid here. Those factors which enabled the courts in *Graynęd* and *Marin II*, to save enactments from constitutional challenge are absent here. We can find no way here to construe the regulations so as to avoid the necessity of declaring them unconstitutional.

### C.—Article VI, Sections F and H

■ These regulations [5] are about as broad a ban upon free expression in school as can be imagined. Proscribed is the circulation of materials "alien to school purposes" including all political, religious, or commercial literature, notices or posters. Also proscribed is the recruitment from the school population of followers of any organization of "political-partisan and/or religious-sectarian character" within the school. No attempt is made to restrict the operation of these rules to situations where school functioning is materially disrupted or the rights of students substantially infringed.[6]

The school authorities contend that these rules are needed to prevent political and other agitation current in the Commonwealth from invading the schools and disrupting the educational process. This seems to us to be precisely the kind of "undifferentiated fear" which the *Tinker* Court made clear could not support infringement upon the First Amendment

rights of students, Tinker v. Des Moines School District, supra, 393 U.S. at 508, 89 S.Ct. 733.

These regulations suffer from vagueness (what is "alien" to school purposes?), and most certainly from overbreadth. They also operate as a system of prior restraint upon expression, which comes into court "bearing a heavy presumption against its constitutional validity . . ." New York Times Co. v. United States, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); Marin v. University of Puerto Rico (Marin II), supra. Nothing in this record even approaches justification sufficient to overcome this burden. Additionally, these sections infringe upon the right of free association. See Healy v. James, 408 U.S. 169, 92 S.Ct. 2338, 33 L.Ed.2d 266 (1972).

. In view of all of this and the fact that the Commonwealth has made no attempt to find a "less drastic means" to accomplish its permissible purposes, Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960); and in view of the importance which is attached to the robust and unfettered exercise of First Amendment freedoms in our schools, Shelton v. Tucker, supra, Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1960), Tinker v. Des Moines School District, supra, Healy v. James, supra, we find these regulations void on their face.

5. ARTICLE VII—SCHOOL DISCIPLINE
The following actions constitute violations of the constitutional order and they are punishable with disciplinary sanctions:
F. Circulating propaganda in the school which is alien to school purposes, including the circulation of publications, political notices, posters, and other such material or means, aimed at promoting movements of a political-partisan, or religious-sectarian character, or commercial promotion on the school premises.
H. To recruit followers from the school population for organizations of political-partisan and/or religious-sectarian character within the school.

6. The parties have stipulated that Section G, Article VII, which prohibits all meetings or other activities of a "political-partisan and/or religious-sectarian nature" in the school, or outside of the school if "they affect the institutional order", is also involved in No. 946–72. However, under the circumstances presented, this section merely overlaps section B, if the picket line can also be considered a "meeting or other activity". In any event, to the extent that Section G completely bans political activity in schools it suffers from the same defects as sections F and H, and to the extent that this section bans activities outside of the school which "affect' the institutional order" it is as impermissibly vague and overbroad as sections B and D.

#### D.—Article IX, Section B

Under the procedural provisions of this Article of the Student Regulations [7] plaintiffs in both No. 764–72 and No. 946–72 were ordered suspended from school for five days. Plaintiffs were not given a formal prior hearing, although an informal hearing or interview was held in each case. · Written notice of the alleged violations was furnished after punishment had been instituted.

In Marin v. University of Puerto Rico (Marin II), supra, the importance of affording due process protection to those facing school disciplinary proceedings was emphasized. Here we deal with secondary school pupils, rather than with college students. But as was said in Sullivan v. Houston Independent School District, 307 F.Supp 1328, 1343 (S.D. Texas 1969): "The high school student perhaps even more than the university student needs careful adherence to concepts of procedural fairness and reasonableness by school officials."

█ Although Marin II indicated that all school suspensions must be preceded by a full and rather formal hearing, except in emergency situations, that case dealt with very lengthy suspensions and was not directly concerned with the kind of relatively mild punishment involved here. We think that, where suspension of no more than five days is concerned, more informal procedures than those mandated in *Marin II* may be employed, but we also adhere to the view that, absent grave emergency, some form of prior hearing must be afforded. See Vail v. Board of Education of Portsmouth, 354 F.Supp. 592, 603 (D.N.H. 1973). Under the Student Regulations the student must be given "an opportunity to be heard" before suspension, Article IX, Section B. In one of the cases before us this opportunity to be heard took the form of an interview. This appears to us to satisfy the requirements of due process, provided that the student is informed prior to the interview of the nature and substance of the charges against him and he has a meaningful opportunity to present his side during the interview. A hearing can be meaningful only if the authorities have given the accused person an opportunity to plan, prepare and present his response and the evidence in mitigation or for defense.

█ Because the regulations which the plaintiffs are accused of violating have been found by us to be unconstitutional and because the record is rather sketchy, we need not determine whether the suspension procedures as applied to each of · the plaintiffs were adequate in all details to fully afford due process protection. Since the regulations upon whose violation punishment was premised are invalid, the punishment cannot stand.[8] Fujishima v. Board of Education, 460 F.2d 1355, 1359 (7th Cir. 1972); Quarterman v. Byrd, 453 F.2d 54 (4th Cir. 1971); Vail v. Board of Education of Portsmouth, 354 F.Supp. 592, 598 (D.N.

7. ARTICLE IX—NORMS AND PROCEDURES FOR IMPOSITION OF SANCTIONS

   B. By means of an informal procedure the School Principal, after an investigation and the opportunity to be heard, may suspend a student up to a maximum of five (5) school days, for violation of any of the provisions of these regulations or other school laws and policies. The student and the parent or guardian should be informed through written communication of the imposed disciplinary sanction and the reasons therefor. The Superintendent of Schools may act in the first instance when in his judgment the case warrants it, following the informal procedure established above.

8. We have not considered whether plaintiff in No. 764–72 could properly have been punished for violation of section C of Article VII, because by stipulation that section was not in issue. However, since one punishment was imposed for violation of three sections of the Regulations, two of which we have found invalid, and because we have no means of assessing the relative weight given to the violation of each section, we must void the punishment. See Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971); Stromberg v. California, 283 U.S. 359, 51 S.Ct. 532, 75 L.Ed. 1117 (1931).

H.1973). We are aware of cases wherein student punishment under invalid rules has been upheld where the student conduct was "flagrant", see, e. g. Sullivan v. Houston Ind. School District, 475 F.2d 1071, 1076–77 (5th Cir.), cert. denied, 414 U.S. 1032, 94 S.Ct. 461, 38 L. Ed.2d 323 (1973), and a related line of cases, led by Schwartz v. Schuker, 298 F. Supp. 238 (E.D.N.Y.1969), which holds that "gross disobedience" of school rules or "gross disrespect" toward school authorities justify student discipline regardless of the constitutional validity of the school rules or the actions of the school authorities, see discussion in Quarterman v. Byrd, supra, 453 F.2d at 60, n. 11. But the conduct of the plaintiffs in these consolidated cases was not "flagrant" or in "gross" disregard of school regulations or authority, if these terms mean anything more than the bare fact of violation of a rule. It is not alleged here that repeated acts of defiance of the authority of school officials occurred, or that profanity was directed at them. The situation presented is a far cry from that in Sullivan v. Houston Ind. School District, supra. Here school rules were peacefully tested by means of one time violations.

## IV. CONCLUSION

For the reasons set forth above, we declare Sections B, D, F and H of Article VII of the Regulations for Students in the Public School System of the Commonwealth of Puerto Rico unconstitutional and void on their face. We will refrain from enjoining enforcement of these regulations at the present time in order to give the Commonwealth Secretary of Education and the State Board of Education time to promulgate new rules. The suspensions and other discipline meted out to the plaintiffs for violation of these rules are declared void and ordered permanently enjoined. We further order that reference to them in the students' records be expunged.

A judgment will be entered accordingly.