**Laurence Wilson CROW, Plaintiff,**

v.

**STATE OF NORTH CAROLINA, Defendant.**

**No. C–C–83–0809–P.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

Oct. 14, 1983.

Peter H. Gerns, Charlotte, N.C., for plaintiff.

Rufus L. Edmisten, Atty. Gen., Isaac T. Avery, III, Sp. Deputy Atty. Gen., David Roy Blackwell, Asst. Atty. Gen., N.C. Dept. of Justice, Raleigh, N.C., for defendant.

## MEMORANDUM AND ORDER

POTTER, District Judge.

On October 1, 1983 the Plaintiff was arrested for driving under the influence of alcohol in Mecklenburg County, North Carolina. Pursuant to N.C.G.S. § 20–16.5, the arresting officer and chemical analyst filed affidavits with the magistrate at the initial hearing held that day. The Plaintiff's alcohol concentration was 0.18.

During the initial hearing the magistrate determined whether there is probable cause to believe that

(1) A law enforcement officer has reasonable grounds to believe that the person has committed an offense subject to the implied—consent provisions of G.S. 20–16.2;

(2) The person is charged with that offense as provided in G.S. 20–16.2(a);

(3) The charging officer and the chemical analyst comply with the procedures of G.S. 20–16.2 and G.S. 20–139.1 in requiring the person's submission to or procuring a chemical analysis; and

(4) The person:

(a) Willfully refuses to submit to the chemical analysis; or

(b) Has an alcohol concentration of 0.10 or more within a relevant time after the driving. N.C.G.S. § 20–16.-5(b), (e).

After considering the affidavits the magistrate concluded as a matter of law that the affidavits satisfied the statutory conditions in N.C.G.S. § 20–16.5(b) and the Plaintiff's license was immediately revoked for a ten-day period.

On October 3, 1983 the Plaintiff requested a hearing before a state district court judge to challenge the license revocation. N.C.G.S. § 20–16.5(g) provides that the hearing shall be held within three working days of the request if before a magistrate or within five working days if before a state district court judge. The hearing was afforded on October 5, 1983.

At the hearing the Plaintiff challenged N.C.G.S. 20–16.5 under North Carolina and federal constitutional grounds. The District Court Judge denied the Plaintiff's motion to rescind the license revocation on grounds of unconstitutionality. The Plaintiff instituted no further attempts to challenge the statute in the North Carolina General Courts of Justice.

The Plaintiff subsequently brought this action in federal court under 42 U.S.C. § 1983 and invokes this Court's jurisdiction under 28 U.S.C. § 1343. In his petition he

attacks the constitutionality of N.C.G.S. § 20–16.5 on two grounds. First, the license revocation procedure denies him due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States of America. Second, the license revocation procedure denies him due process of law as guaranteed by Article I, section 19 of the North Carolina Constitution. Additionally, at oral arguments, the Plaintiff challenged N.C.G.S. § 20–16.5 on the grounds that it is in reality a criminal statute and not a civil administrative proceeding. This contention raises a third claim of unconstitutionality in that the North Carolina Constitution provides the accused with a right to a jury trial in "any crime". N.C. Const. Art. I, § 24. There is not a right to a jury trial under N.C.G.S. § 20–16.5.

The Plaintiff asks the Court to declare N.C.G.S. § 20–16.5 of the North Carolina Safe Roads Act of 1983 unconstitutional and that the defendants be enjoined from enforcing the provisions of that statute against him. By this Order the Court abstains from deciding whether the challenged statute is constitutional while the parties return to the North Carolina courts for resolution of their state constitutional questions.

The Plaintiff has failed to appeal or petition either of the North Carolina appellate courts for review of the decision of the North Carolina District Court.[1] Instead, the Plaintiff immediately petitioned the United States District Court to enjoin the action taken by the North Carolina District Court. By asking this Court to determine the constitutionality of the challenged statute the Plaintiff is in effect asking the United States District Court to sit in appellate review every time a state district court renders a contested decision. Not only is this an attempt to supplant the appellate power of the North Carolina courts but it

also presents sensitive issues regarding the respective dichotomy of federal and state jurisprudence.

The North Carolina Safe Roads Act of 1983 has been in effect for less than one week at the time of this hearing. The North Carolina appellate courts have never had an opportunity to construe or consider its validity under North Carolina law. The doctrine of abstention is to be invoked by a federal court when a state statute has not been previously construed or is susceptible of a construction by the state courts that would avoid or modify the constitutional controversy. *See, Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970); *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). As the abstention doctrine was first articulated in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941)

> the federal courts, exercising a wise discretion, restrain their authority because of scrupulous regard for the rightful independence of the state governments and for the smooth working of the federal judiciary. This use of equitable powers is a contribution of the courts in furthering the harmonious relation between state and federal authority without the need of rigorous congressional restrictions of these powers. 312 U.S. at 501, 61 S.Ct. at 645 (citations omitted).

It is, therefore, necessary to consider the contentions raised under the laws of North Carolina. First, as the Plaintiff raised in his petition, the statute raises challenges under Article I, section 19 of the North Carolina Constitution. The North Carolina "law of the land clause" is similar to the due process clause of the Fourteenth Amendment, *Horton v. Gulledge*, 277 N.C. 353, 177 S.E.2d 885 (1970). The possibility exists that the North Carolina courts could

---

1. The Plaintiff contends he exhausted "all available state remedies" by his challenge in the North Carolina District Court. His allegation is based on N.C.G.S. § 20–16.5(a) which states that the "decision of the judicial official is final and may not be appealed in the General Court of

Justice." The Court notes that even if N.C.G.S. § 20–16.5(g) is interpreted as precluding a right to challenge the constitutionality by "appeal", N.C.G.S. § 7A–32 provides an alternative method for the Plaintiff to raise his claim in the North Carolina appellate courts.

find that the new statute is unconstitutional under the "law of the land clause". Furthermore, the North Carolina appellate courts have never been given an opportunity to consider the constitutional validity of the statute. Therefore, no matter how reasoned the judgment of this Court may be ". . . it cannot escape being a forecast rather than a determination" as to the constitutionality under the North Carolina Constitution. *See, Pullman,* 312 U.S. at 499, 61 S.Ct. at 644.

Second, the Plaintiff raised the argument at the hearing that the statute is criminal in nature although the legislature has defined it as a civil administrative proceeding. N.C.G.S. § 20–16.5. The statute itself is replete with terms commonly utilized in criminal proceedings, such as "finding probable cause," "reasonable grounds to believe" and an "initial appearance". N.C.G.S. § 20–16.5(b), (d) and (e). The statute, however, does not provide the aggrieved person with a jury trial. The North Carolina Constitution is more expansive than the federal constitution as to the right to a jury trial in criminal proceedings. Under the North Carolina Constitution there exists a right to a jury trial for "any crime". N.C. Const. Art. I, § 24. Of course, based on North Carolina decisions regarding *other* civil license revocation proceedings, this Court could attempt to determine whether the statute is a criminal proceeding under North Carolina law. The decision, however, would be tentative in nature since there have not been any North Carolina opinions on this particular statute. Furthermore, the decision could be displaced tomorrow by a contrary state adjudication.

■ Third, the statute is ambiguous in sections (b) and (d) as to the exact limits set on the magistrate's inquiry at the initial appearance. The statute delineates four inquiries that must be determined at the initial appearance. The statute, however, is silent as to whether any further inquiries can be raised at the initial appearance. The interpretation of these sections by the state court could have a significant effect on determining the fourteenth amendment due process challenge. There are two determinations necessary in deciding whether a statute is in violation of the fourteenth amendment. One, is whether there is an interest that qualifies for protection under the due process clause of the fourteenth amendment. Next, the Court must determine what process is due. *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Therefore, if the Court is to determine whether the statute satisfies the process due it should be clear what process is afforded by the state.

■ Based on the above articulated state law problems, this Court is of the opinion that the challenged statute presents the Court with the classic *Pullman* abstention situation. The statute has never been interpreted by the North Carolina appellate courts. There are questions regarding its validity under the Constitution of North Carolina. It concerns sensitive areas of state policy regarding protection of North Carolina citizens from the drunk driver. Finally, the resolution of the federal constitutional challenge is intermeshed with the state constitutional challenges.

This situation presently before the Court is virtually identical to the controversy presented in *Reetz v. Bozanich,* 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). The petitioner in *Reetz,* challenged a state commercial license requirement on both federal and state constitutional grounds. The state courts had never interpreted the provision at hand. The three judge district court panel, however, "feeling sure of its grounds on the merits" refused to abstain because they felt sure the state court would have shared their conviction that the statute was unconstitutional. 397 U.S. at 86, 90 S.Ct. at 790. The Supreme Court vacated the decision holding the district court should have abstained while the parties sought resolution of their claims in state court. 397 U.S. at 87, 90 S.Ct. at 790. In a unanimous opinion the Supreme Court in *Reetz* stated that the

"[p]roper exercise of federal jurisdiction requires that controversies involving unsettled questions of state law be decided

in the state tribunal preliminary to a federal court's consideration of the underlying federal constitutional questions.... That is especially desirable where the questions of state law are enmeshed with federal questions.... Here, the state law problems are delicate ones, the resolution of which is not without substantial difficulty—certainly for a federal court.... In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider its validity under the Federal Constitution, the federal court should hold its hand, lest it render a constitutional decision unnecessarily."

\*  \*  \*  \*  \*  \*

The *Pullman* doctrine was based on "the avoidance of needless friction" between federal pronouncements and state policies. The instant case is the classic case in that tradition, for here the nub of the whole controversy may be the state constitution. 397 U.S. at pp. 85, 87, 90 S.Ct. at pp. 789, 790, quoting *City of Meridan v. Southern Bell Tel. & Tel. Co.*, 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562 (1959) and *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

Similarly, the challenged North Carolina statute has been in effect for less than one week. The North Carolina appellate courts have never had the opportunity to construe or consider its validity under the laws of North Carolina. The statute, passed in heated debate as to its constitutionality, touches delicate areas of state policy which the federal courts ought not to entertain unless there is not an open alternative to its adjudication. Such constitutional adjudication obviously can be avoided if a definitive ruling on the state issues terminates the controversy. The Court is therefore of the opinion that this Court should abstain from deciding whether N.C.G.S. § 20–16.5 is constitutional.

IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED, that the United States District Court abstains from deciding the issues presented in the Plaintiff's petition while the parties seek a resolution of their claims in the North Carolina General Courts of Justice.