**MEDINA & MEDINA,**
**Plaintiff, Appellee,**

v.

**COUNTRY PRIDE FOODS, LTD.,**
**Defendant, Appellant.**

**MEDINA & MEDINA,**
**Plaintiff, Appellant,**

v.

**COUNTRY PRIDE FOODS, LTD.,**
**Defendant, Appellee.**

**Nos. 86–2033, 86–2060.**

United States Court of Appeals,
First Circuit.

July 1, 1987.

CERTIFICATION

BREYER, Circuit Judge.

This case turns on a question of Puerto Rico law which has not yet been addressed by the Supreme Court of Puerto Rico. Hence, *sua sponte*, we certify the question of law presented to the Supreme Court of Puerto Rico pursuant to its Rule 27, 4 L.P.R.A.App. I–A, 422–24 (1978). *See In re Torruella-Serralles*, 684 F.2d 170 (1st Cir.1982).

*Background*

Medina & Medina ("Medina") is a collective mercantile partnership organized pursuant to the laws of Puerto Rico in 1969. Medina is a distributor of meat and poultry products. The defendant, Country Pride Foods, Ltd. ("Country Pride"), sells poultry products as a corporation organized under the laws of the United Kingdom, with offices in Arkansas. In 1977, Country Pride appointed Medina its exclusive agent and distributor for all their products sold in Puerto Rico. The contract effectively contained no time limit.[1] Prices for the product were based on a formula which depended on Georgia dock prices, a recognized industry guideline, but were open to negotiation. And, in fact, the formula prices were often increased or decreased by mutual agreement after negotiation.

The district court made the following findings of fact. In March 1978, Country Pride demanded higher prices for its products. In May, 1978, Medina accepted an increase in prices. One month later, Country Pride demanded an additional increase in prices. In October, with the increase still under negotiation, Country Pride proposed to change the formula's rigid pricing structure then in effect to an open market pricing structure. In November, Country Pride changed its original proposal to a formula arrangement of higher prices than the ones existing, to begin on December 1 for a ninety-day tryout period. Medina rejected this formula and counterproposed one with lower prices. Country Pride agreed to Medina's formula for a ninety-day period, but all deliveries were to be "C.I.F. San Juan," with payment "sight draft against ocean bills of lading." Medina advised that the sight draft payment condition was unacceptable.

On November 27, Country Pride restated its position: a) Medina's prices at Country Pride's payment terms or b) open price formula. Medina again rejected the payment terms alleging prior problems with shortages and surpluses in the shipments and also shipments of out of date products. Medina counterproposed a sight draft payable fifteen days after receipt of the product. Negotiations continued but by November 30 it was apparent that an impasse had been reached. On December 4, Country Pride advised Medina that a shipment of goods had been sent and payment was due by sight draft against ocean bills of lading. Thereafter, Medina made another proposal relative to payment terms, to wit, payment seven days after receipt of the product. Country Pride rejected this proposal and reiterated its position: "1) our price, your credit terms, 2) your price, our credit terms." Unable to reach an agreement, on December 7th Country Pride announced its withdrawal from Puerto Rico's market; Medina accepted the withdrawal. Payment was then requested for the last shipment but Medina stated that payment

---

1. Although the formal letter of appointment included a twenty day termination clause, both parties concede that this termination clause is ineffective under Law 75. 10 L.P.R.A. § 278.

would be according to pre-November terms. Country Pride demanded a transfer of funds against commercial invoice to be telexed. Medina retorted that title to shipped goods passed upon tender to carrier at port of shipment, and Country Pride had no right to condition delivery upon payment for the goods. Country Pride rejected Medina's claim on December 12 and also advised that the agency agreement was terminated.

Medina subsequently brought suit under the Puerto Rico Dealer's Act, Law No. 75, 10 L.P.R.A. §§ 278 *et seq.*, claiming that Country Pride had unilaterally terminated their distribution agreement without just cause. Defendant filed a motion for summary judgment raising, *inter alia,* the issue of whether Law 75 prohibits a dealer's complete withdrawal from the market in the absence of "just cause." The district court held that it did, and denied summary judgment. 631 F.Supp. 293. After a trial, the court decided in favor of plaintiff.

*Discussion*

Under Law 75 a supplier cannot terminate its agreement with a distributor except for "just cause." 10 L.P.R.A. § 278(a). Just cause is defined as: "Nonperformance of any of the essential obligations of the dealer's contract, on the part of the dealer, or any action or omission on his part that adversely and substantially affects the interests of the principal or grantor in promoting the marketing or distribution of the merchandise or service." 10 L.P.R.A. § 278(d). Under the plain words of the statute, only the *dealer's* acts or omissions may constitute just cause; thus, the district court determined the defendant had no just cause.[2] *See Warner Lambert Co. v. Tribunal Superior,* 101 D.P.R. 378, 400 (1979).

Nevertheless, the Supreme Court of Puerto Rico, in examining the definition of just cause, considered possible reasons, not specifically provided for in the statute, for a supplier to terminate an agreement, including a "decision to completely leave the

area where it operated." *Marina Industrial Inc. v. Brown Boveri Corp.,* 114 D.P.R. 64, 85 (1983). The court, though, did not rule on this issue since the supplier had no legal standing to raise it. Country Pride did allege complete withdrawal in good faith as a justification for terminating the relationship and, therefore, has standing. And, as the United States Supreme Court stated in considering Law 75, "just cause might be judicially confined to a more narrow ambit which would avoid all constitutional questions." *Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 44, 91 S.Ct. 156, 158, 27 L.Ed.2d 174 (1970).

Here, the principal and distributor, in apparent good faith, are simply unable to agree on price and credit terms.[3] The parties' agreement contained no fixed prices or credit terms but rather was open to negotiation. If a supplier in Country Pride's situation is limited to the reasons specifically provided in the statute, the supplier would be forced to either accept the dealer's price and credit terms, or terminate the agreement and suffer the consequences of paying large damages. Conceivably then, the dealer could use Law 75 as a weapon to extort lower prices from the supplier. This poses a question as to whether the legislators intended Law 75 to apply to this type of situation.

The legislature of Puerto Rico enacted Law 75 to protect distributors, agents, concessionaires and representatives of a product or service in Puerto Rico. The legislature's statement of motives includes the following:

The Commonwealth of Puerto Rico cannot remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, concessionaires, or agents, as soon as these have created a favorable market and without taking into account their legitimate interests.

It seems that, more specifically, Law 75 was intended to protect dealers who built up a market, from suppliers who wish to

---

**2.** Since there was no just cause, the district court then considered whether the doctrine of *rebus sic stantibus* could excuse the defendant's withdrawal, but determined that it could not.

**3.** The district court made no finding of bad faith; thus, under the law of Puerto Rico, good faith is presumed. *See Carrasquillo v. Lippit & Simonpietri, Inc.,* 98 P.R.R. 646 (1970).

appropriate their established clientele. The supplier has taken advantage of the dealer's efforts in creating a market, leaving the dealer stranded. This did not occur in the instant case. Here the defendant withdrew completely from the market after terminating its agreement with the plaintiff. There was no evidence that the supplier subsequently attempted to appropriate the clientele or good will established by plaintiff. Does the purpose of Law 75 nonetheless encompass this situation?

In our review of the case law, there does not seem to be a direct ruling on this precise issue of a good faith withdrawal due to an impasse on price and credit terms. Thus, we submit for certification to the Supreme Court of Puerto Rico the following:

## QUESTION OF LAW

Where there is a contract of indefinite time period, with price and credit terms left open to negotiation, and the parties negotiate in good faith but cannot reach an agreement as to price and credit, does Law 75 prohibit the supplier from unilaterally and completely withdrawing from the market, when the supplier makes no attempt to appropriate the dealer's good will or established clientele?