[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-16152
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APRIL 28, 2010
JOHN LEY
CLERK

D.C. Docket No. 07-00043-CV-HL-7

RELIABLE TRACTOR, INC.,
a Georgia Corporation
d.b.a. Stafford,

Plaintiff-Appellee,

versus

JOHN DEERE CONSTRUCTION & FORESTRY COMPANY,
a Delaware corporation as successor to John Deere Industries
Equipment Company,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(April 28, 2010)

Before BLACK, PRYOR and COX, Circuit Judges.

PER CURIAM:

Reliable Tractor, Inc. and John Deere Construction & Forestry Company executed two dealer agreements in 1984 at John Deere's headquarters in Maryland. The agreements appointed Reliable Tractor as a dealer of John Deere forestry and utility equipment for a fourteen county region in Georgia. The dealer agreements were open-ended—they did not contain a term of duration and allowed either party to terminate the agreements without cause on 120 days notice. At the time the contracts were executed, the 120 day notice provision was enforceable under Maryland law.

In 1987, Maryland enacted the Equipment Dealer Contract Act. Md. Code Ann., Com. Law § 19-101 *et. seq.* This Act was amended in 1998 to provide that equipment suppliers, like John Deere, may not terminate a dealer agreement without good cause. *Id.* § 19-103. From 1984 through March 2007, John Deere and Reliable Tractor performed their obligations under the dealer agreements, and neither sought termination. On March 27, 2007, John Deere gave notice to Reliable Tractor that it would terminate the agreements in 120 days pursuant to the agreements' no-cause provision. Reliable Tractor filed this suit against John Deere in the United States District Court for the Middle District of Georgia, asserting a breach of contract claim and a claim for declaratory relief seeking to declare John Deere's attempt to terminate the dealer agreements unlawful and void under the Maryland Act.

Reliable Tractor moved for summary judgment on its claim for declaratory relief, and John Deere filed a motion to dismiss Reliable Tractor's complaint. Reliable Tractor argued that the attempted termination of the dealer agreements violated the Maryland Act's good cause provision. John Deere countered: (1) that the Act does not apply to the dealer agreements because Georgia law, not Maryland law, applies to the 1984 agreements; (2) even if Maryland law applies, the good cause provision in the Act only applies to contracts entered into after the effective date of the Act; (3) even if the good cause provision applies, its application would violate the Contracts Clause, Due Process Clause, and Full-Faith-and-Credit Clause of the United States Constitution; and (4) even if application of the good cause provision would not violate the Constitution, there are genuine issues of material fact as to whether John Deere did in fact have good cause to terminate the agreements.

The district court certified to the Maryland Court of Appeals the question whether the good cause provision of the Act applies to contracts executed before it was enacted in 1998. The Maryland court answered that the Act did apply to the dealer agreements. The court recognized that under Maryland law statutes are presumed to operate prospectively unless there is evidence of a contrary intent, and it concluded that the Act, as applied to the agreements in this case, applied prospectively as opposed to retrospectively. The court interpreted the agreements not

3

as contracts with an indefinite term, but as a series of 120 day contracts that renewed whenever the parties continued to perform their obligations without announcing that they intended to exercise their rights to terminate under the 120 day notice provision. The court explained that "the contracts, by their terms, could be terminated by either party at any time without good cause, merely by providing 120 days notice. It is logical, then, that neither party could reasonably expect the contracts to continue for more than 120 days from any given date." (R.1-37 at 8.) It reasoned that once the statute was enacted in 1998, John Deere and Reliable Tractor had constructive notice of its existence. And, "[b]y continuing to perform their obligations under the contracts without providing notice of termination, the parties effectively renewed their contracts consistent with the applicable law in effect at the time." (*Id.*) So, the court concluded that the first renewal of the dealer agreements that occurred120 days after the good cause provision became law bound John Deere to comply with that provision. (*Id.*)

With the benefit of the opinion of the Maryland Court of Appeals, the district court considered Reliable Tractor's motion for summary judgment and John Deere's motion to dismiss. John Deere argued that if the Maryland court's interpretation of the agreements as a series of 120 day contracts was to be adopted by the district court, the court must find that the Act could not apply to the agreements because in 1991,

4

John Deere had moved its headquarters from Maryland to Illinois. According to John Deere, once its headquarters was moved, the renewals of the agreements could not have occurred in Maryland because neither party had a presence in the state, and under Georgia choice of law rules, Maryland law would not apply. John Deere also reasserted that application of the Maryland Act's good cause provision would violate the Constitution and even if it would not, genuine issues of material fact would preclude the grant of summary judgment to Reliable Tractor. The district court disagreed. It explained that the Maryland court applied a "legal fiction" to conclude that the agreements were a series of 120 day contracts. In actuality, the agreements were executed one time, in Maryland, in 1984. Therefore, the court held, under Georgia's choice of law rules, Maryland law applied. (R.1-47 at 11.) The court went on to note that it was bound to accept the Maryland court's holding that the Act's good cause provision applied to the agreements. So, it held that an attempt by John Deere to terminate the agreements without cause would violate the Act. And, because the Maryland court concluded that the Act applied prospectively, not retrospectively, the district court held that application of the good cause provision did not violate the United States Constitution. (*Id.* at 12-13.) Further, it held that there were no genuine issues of material fact as to whether John Deere possessed good cause to terminate the agreements. (*Id.* at 19.) Therefore, the court granted Reliable Tractor's motion

for summary judgment as to its claim for declaratory relief, and it denied John Deere's motion to dismiss. (*Id.* at 22.) John Deere filed this interlocutory appeal pursuant to 28 U.S.C. § 1292.

Subject matter jurisdiction in this case is based on diversity of citizenship. Thus, the forum state's substantive law applies, including its choice of law rules. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020 (1941). Georgia, the forum state, applies the *lex loci contractus* doctrine in determining what state's law applies to contracts. The *lex loci* rule provides that contracts "are to be governed . . . by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case . . . the laws of that sister State will be applied." *Convergys Corp. v. Keener*, 582 S.E.2d 84, 86 n.1 (Ga. 2003) (quotations and citations omitted). We assume *arguendo* that Reliable Tractor is correct that Maryland law applies to the agreements at issue. And, we are bound to accept the Maryland Court of Appeals' conclusion that, under Maryland law, the Act's good cause provision applies to the agreements. Even so, we conclude that application of the good cause provision would violate the Contracts Clause of the United States Constitution.

Article I, § 10 of the United States Constitution provides that no state shall pass any law impairing the obligation of contracts. In determining whether a state law

6

violates the Contracts Clause, we ask "whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S. Ct. 1105, 1109 (1992). Because we are asked to interpret the United States Constitution, federal law controls this inquiry. "The question whether a contract was made is a federal question for purposes of Contract Clause analysis, and whether it turns on issues of general or purely local law, we can not surrender the duty to exercise our own judgment." *Id.* at 187, 112 S. Ct. at 1110 (quotations and citations omitted). While the Maryland Court of Appeals held that for purposes of Maryland law the dealer agreements in this case should be considered a series of 120 contracts, we are not bound to adopt this interpretation. Rather, we must conduct an independent federal law analysis of the agreements for purposes of the Contracts Clause inquiry.

The plain language of the dealer agreements demonstrates that they were open-ended contracts with no term of duration that could be terminated without cause by either party on 120 days notice. We see no reason to conclude, as the Maryland court did, that continued performance under the contracts beyond the 120-day notice period equated to the making of a new contract. Rather, we give effect to the terms of the agreements themselves and conclude that they were executed once, in 1984, and that

7

the original agreements continued to be in force until John Deere attempted to exercise its rights under the 120 notice provision in 2007. *See* 11 WILLISTON ON CONTRACTS § 32:3 (4th ed.) ("The plain, common or normal meaning of language will be given to the words of a contract unless the circumstances show that in a particular case a special meaning should be attached to them.").

Because the original 1984 dealer agreements were in force in 1998 when the Maryland Act's good cause provision became law, the Act effected a change in law that impaired an existing contractual relationship—it limited a contractual right to terminate the dealer agreements. And, we conclude that this impairment was substantial. A provision granting the right to terminate a contract without cause is a material provision of that contract. *See Fornaris v. Ridge Tool Co.*, 423 F.2d 563, 568 (1st Cir. 1970), *rev'd on other grounds* 400 U.S. 41, 91 S. Ct. 156 (holding that a law converting a contractual relationship terminable by either party without cause into one which can be terminated only under certain conditions was a "change of great magnitude" that violated the Contracts Clause). The Maryland Act impairs the contractual right of one party, John Deere, to terminate the contract without cause on 120 days notice. Applying the Act would effectively extend the dealer agreements indefinitely unless John Deere can meet the terms of the Act's good cause provision. We conclude that this would substantially impair the contractual relationship between

8

John Deere and Reliable Tractor and would violate the Contracts Clause. *See Morgan v. Kemper Ins. Cos.*, 754 F.2d 145, 147-48 (4th Cir. 1985) (holding that a retroactive application of a statute impairing an insurer's contractual right to terminate an agent without cause violated the Contract Clause); *Garris v. Hanover Ins. Co.*, 630 F.2d 1001, 1006 (4th Cir. 1980) (same). We therefore reverse the grant of summary judgment for Reliable Tractor, and remand for entry of a judgment in favor of John Deere.

REVERSED AND REMANDED.