PIASECKI AIRCRAFT CORPORATION, New Castle, Delaware, Plaintiff,

*vs.*

INTERNATIONAL UNION, UNITED AUTOMOBILE, AIRCRAFT AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA (U. A. W.-A. F. L.-C. I. O.) LOCAL NUMBER 840, LARRY LORONI, Individually and as President and Member of Local 840, SAMUEL HINGER, individually and as Vice President and Member of Local 840, MARTY CANNELONGO, individually and as Financial Secretary and Treasurer and Member of Local 840, WANDA GIAMETTEO, individually and as Recording Secretary and Member of Local 840, STANLEY ZIELINSKI, individually and as Executive Board Member at Large and as Member of Local 840, SAM PIANE, individually and as Trustee and as Member of Local 840, ANTHONY STELLA, individually and as Trustee and Member of Local 840, Defendants.

*New Castle, February 15, 1957.*

*John M. Bader, Wilmington,* and *Francis E. Marshall* of Davis, Marshall & Crumlish, Philadelphia, Pa., for plaintiff.

*Ernest S. Wilson, Jr.,* Wilmington, and *Lowell Goerlich,* Washington, D. C., for defendants.

MARVEL, Vice Chancellor: ▪ Piasecki Aircraft Corporation is a Pennsylvania corporation and is the owner of a plant located on 13th Street in the City of New Castle, having purchased such premises from Bellanca Aircraft Corporation late in 1956. Piasecki's main plant is in Pennsylvania, where it has been principally engaged in manufacturing vertical lift aircraft. On the present record I am satisfied that plaintiff's labor disputes, if any, burden or tend to burden commerce and are accordingly generally subject to federal regulation under the Labor Management Relations Act, 1947, 29 *U.S.C.A.* § 141 *et seq., Taylor v. Highway Truck Drivers, ante p.* 313, 129 *A.2d* 660. The defendant, Local 840 International Union, United Automobile, Aircraft and Agricultural Implement Workers of America, is an unincorporated labor association, and the individual defendants are its officers and trustees.

On June 1, 1955, Bellanca and Local 840 entered into a contract designed to regulate and govern relations between the employing corporation and members of Local 840 working at what was then the Bellanca plant at New Castle. The contract is a lengthy document consisting of eighty-nine paragraphs setting forth the terms and conditions of employment of union employees by Bellanca for a period of two years. Paragraph 86 of the agreement provided for its continuation for additional periods of one year subject to the right of either party on due notice to terminate the agreement or to request modification of its terms through negotiation.

Article XIII (paragraph 85) of the agreement provides:

"This Agreement shall be binding upon the successors and assigns of the parties hereto and no provisions, term or obligation herein contained shall be affected, modified, altered or changed in any respect whatsoever by the consolidation merger, sale, transfer, or assignment of either party hereto, or affected, modified, altered or changed in any respect whatsoever by any change of any kind in the legal status, ownership or management of either party hereto, except as provided in Paragraph (89) of Article XIV hereof."

The exception referred to above is set forth in paragraph 89 of Article XIV as follows:

"Notwithstanding anything contained in this Article XIV to the contrary, this agreement may be terminated prior to the expiration date stated in Paragraph (86) of this Article in the event that the plant or business of the Company located at New Castle, Delaware, shall be sold, assigned or transferred to a person, firm, or corporation that is not affiliated with the Company. In such event the Company shall notify the Union in writing at least fifteen (15) days prior to the consummation of such sale, assignment or transfer".

The complaint,[1] which was filed on January 17, 1957 alleges that by letter dated November 1, 1956 Bellanca notified Berthold Bothe, assistant regional director of defendant's parent union and one of the signers of the labor contract here involved, of Bellanca's proposed sale of its plant at New Castle, and purportedly terminated[2] the Bellanca-Local 840 labor agreement "* * * effective midnight 11/23/56". Thereafter, plaintiff's president having on October 30, 1956 written to Bellanca's former employees about job opportunities at their former plant, operation of such plant was allegedly taken over by Piasecki on or about November 23, 1956, the date of consummation of the sale according to the complaint. On November 25, 1956, members of the defendant union began to picket plaintiff's premises.

Plaintiff claims that such picketing by members of Local 840 has been consistently provocative, vituperative and violent, that since late November 1956 fifty pickets on the average have daily patrolled

1. An affidavit of February 7, 1957 of Angelo F. Baldini, a former officer of Bellanca, filed for plaintiff states that a copy of Bellanca's letter to Mr. Bothe dated November 1, 1956 was sent to Lawrence Laroni, president of Local 840, and points out that both Mr. Bothe and Mr. Laroni acknowledged receipt of such letters in their joint letter to Bellanca dated November 13, 1956, Ex. No. 5, Bothe affidavit.

2. It is apparently conceded by defendants that there is no element of corporate affiliation between Bellanca and Piasecki.

plaintiff's premises, at times blocking and generally slowing access to the plant, that windows of a bus carrying workers into plaintiff's plant were splintered by blows, and that tacks and three pronged spikes have been scattered so as to impede the entry of motor vehicles into the plant. Plaintiff seeks injunctive relief against any picketing because of this alleged pattern of mass picketing and threats of violence. Plaintiff also contends that inasmuch as Bellanca has in effect gone out of business at the picketed plant, this Court must grant the relief requested because plaintiff cannot successfully seek relief against defendants before the National Labor Relations Board, there being no labor dispute between the present parties cognizable in that tribunal, citing *Morgan Millwork Company v. Highway Truck Drivers,* 35 *Del.Ch.* 290, 115 *A.2d* 709.

Defendants by affidavit deny violence on the part of their pickets and assert a number of defenses in the form of motions. The only defenses having any substantial support on the present record[3] are as follows: (1) alleged lack of jurisdiction of this Court over a claimed labor dispute in which violence is denied, (2) that factual issues concerning alleged violence on the part of defendants' pickets cannot be constitutionally and fairly adjudicated short of trial, and (3) that defendants are entitled to a stay because of the pendency of prior proceedings in the United States District Court for the District of Delaware in which the present defendants seek a declaratory judgment requiring the present plaintiff to abide by the terms of the Bellanca-Local 840 contract.

Considering the third defense first, I decline to exercise my discretion to grant a stay solely because proceedings having to do with the rights and duties, if any, of the present parties under the Bellanca-Local 840 contract are merely pending in a sister court, *Chadwick v. Gill,* 16 *Del.Ch.* 127, 141 *A.* 618. The overriding issue in this Court at this stage is not the mutual contractual rights and duties, if any, of the parties to this suit, but that of whether or not defendants have gone beyond proper bounds in the application of

---

3. Defendants' defense of unclean hands is a matter to be considered after final hearing.

sanctions against plaintiff and in their methods of bringing their grievance to the attention of the public. Plaintiff, having sought an injunction against violence, mass picketing and the like, is entitled to a prompt ruling on its application if this Court may appropriately make such ruling.

██ As of now, there is no doubt but that the historic powers of state courts to preserve law and order in the field of management labor relations remain despite the preempting effect of the Labor Management Relations Act, 1947, as interpreted by the Supreme Court of the United States, *United Automobile, etc. v. Wisconsin,* 351 *U.S.* 266, 76 *S.Ct.* 794, 100 *L.Ed.* 1162. Compare *Youngdahl v. Rainfair Inc., Ark.,* 288 *S.W.2d* 589, *certiorari granted* 352 *U.S.* 822, 77 *S.Ct.* 62, 1 *L.Ed.2d* 45.

██ I am not satisfied, however, after argument on plaintiff's motion for a preliminary injunction to restrain defendants' picketing on the grounds of its allegedly violent pattern and after consideration of the conflicting affidavits before me, that plaintiff has factually demonstrated that probability of ultimate success which is a prerequisite to the granting of preliminary injunctive relief.[4] While it is obvious that the claimed termination of the Bellanca-Union contract was followed[5] promptly by vilification of those workers, supervisory personnel and suppliers, who passed defendants' picket line, it appears that picketing by Local 840 in recent weeks has been regulated and controlled by its own officials and that a labor force equivalent in size to that employed prior to November 23, 1956, is entering and leaving plaintiff's plant more or less on schedule. Plaintiff's showing as to mass picketing and the like does not establish that picture of violence and destruction which entitles an employer to a blanket in-

---

4. Because of this conclusion it is unnecessary to consider defendants' attack on this Court's practice of determining the right to a preliminary injunction on the basis of affidavits rather than after a preliminary hearing.

5. Plaintiff's president refers in his affidavit to incidents on the picket line up to but no later than December 17, 1956. . While other affidavits of plaintiff refer to incidents allegedly occurring within a short time before the filing of the complaint, such affidavits are concerned principally with picketing activities before, Christmas 1956.

junction [6] and in view of the controlled situation as to pickets, which now exists at plaintiff's plant, I see no need to limit the extent of such picketing. While plaintiff claims to have suffered economic loss as a result of the picketing, loss of business is no reason for the granting of an injunction against picketing by a court of competent jurisdiction unless such picketing violates state law, *Motion Picture Machine Projectionists v. Rialto,* 25 *Del.Ch.* 347, 17 *A.2d* 836. On the present record I decline to enjoin or limit defendants' picketing activities on the grounds of violence or threats of violence.

Plaintiff contends, however, that regardless of whether or not violence on the part of defendants' pickets has been shown to exist at the gates of its plant and elsewhere, this Court must take jurisdiction and enjoin defendants' picketing because there is no *bona fide* labor dispute (as such is defined in the Labor Management Relations Act, 1947) now pending between plaintiff and the defendant Local. This contention is premised on plaintiff's claim that it is under no legal obligation to defendants and that this Court will not countenance picketing if its object is unlawful, *Sarros v. Nouris,* 15 *Del.Ch.* 391, 138 *A.* 607. However, the question remains, is plaintiff under any obligation to Local 840?

The parties' contentions on the question of whether or not Bellanca's contractual obligations to Local 840 are binding on plaintiff are diametrically opposed. In support of its contention that fifteen days notice "prior to the consummation" of the sale by Bellanca was properly given under paragraph 89 of the Bellanca-Local 840 contract, plaintiff relies on the letters heretofore referred to and to the fact that the deed conveying the New Castle plant to plaintiff was dated November 20, 1956 and was not recorded until November 23, 1956.

Defendants counter by referring to other documents such as a notice posted on bulletin boards at Bellanca's plant on November 1, 1956, stating that "* * * the real estate and other assets of the Air-

---

6. Compare *Wilkes Sportswear v. International Ladies Garment Workers,* 380 *Pa.* 104, 110 *A.2d* 418, in which hearings were held before a preliminary injunction issued.

craft Division of Bellanca Corporation located at New Castle, Delaware has been sold * * *'' in support of the contention that fifteen days' notice prior to the consummation of the sale was not given by Bellanca as required by the terms of the Bellanca-Local 840 contract. It is also contended by defendants that notice, as given, was not addressed to the proper parties. Defendants also seek to establish by affidavits that by November 1, 1956 plaintiff had taken over effective control of work at Bellanca. Finally defendants contend that as a matter of law plaintiff having purchased Bellanca's plant with knowledge of the Bellanca-Local 840 labor contract, must be presumed to have taken over the plant subject to the duties of the employer under such agreement and is a "successor corporation" to Bellanca, citing *Polaner v. Gold Metal Grill, Ohio Com.Pl.*, 117 *N.E.2d* 62, 63,[7] and *N.L.R.B.* cases.

Plaintiff concludes that under the facts now before the Court the present parties are not involved in a labor dispute as such is defined in the Labor Management Relations Act, 1947. Defendants on the other hand, while they have not answered the complaint, have complained in the United States District Court for the District of Delaware (defendants' Ex. 2) for a declaratory judgment directing plaintiff to abide by the terms and conditions of the Bellanca-Local 840 contract and in a "charge against employer" filed against plaintiff before the National Labor Relations Board (defendants' Ex. 1) have accused plaintiff of attempted union breaking and a lockout in disregard of an existing labor contract.

When it is sought to litigate a dispute between a plant owner and a union in a state court, such action may or may not fall within the primary jurisdiction of the National Board. When jurisdiction is uncertain, the state court, in my opinion, must resolve such issue on the available facts and not on the pleadings. As is well stated in an Annotation in 32 *A.L.R.2d* 1026, at *page* 1033.

"In order to show jurisdiction in a state court to restrain picketing affecting interstate commerce, the plaintiff must take

---

7. In this case no reference is made to a termination clause such as is involved in the case at bar.

the position that the picketing does not constitute an unfair labor practice within the meaning of the federal act, while the defendant, in order to show lack of jurisdiction, must take the position that the picketing constitutes such an unfair labor practice."

█ The broad jurisdiction of the National Board cannot be evaded by alleging the absence of a "labor dispute" in a complaint filed in another tribunal, *Avon Products v. Highway Truck Drivers,* 35 *Del.Ch.* 357, 118 *A.2d* 476. Furthermore, a "labor dispute", as defined in § 2(9) of the National Act, § 152(9), *Title 29 U.S.C.A.,* includes any controversy concerning terms of employment "* * * or seeking to arrange terms or conditions of employment, regardless of whether the disputants stand in the proximate relation of employer and employee * * *", and an activity complained of before the Board may be entitled to protection as well as subject to prohibition under the National Act.

██ I have some doubt as to where the power and duty of primary decision lie insofar as the present parties' mutual rights and obligations, if any, are concerned. However, plaintiff is entitled to a ruling on whether or not the picketing activities of defendants amount to that type of mass picketing and overt threats of violence which gave the state court jurisdiction in *Allen-Bradley Local, etc. v. Wisconsin Employment Relations Board,* 315 *U.S.* 740, 62 *S.Ct.* 820, 86 *L.Ed.* 1154.[8] For the reasons stated, on the basis of my evaluation of the facts of record, injunctive relief will not be granted, *Allied Chemical & Dye Corporation v. Steel & Tube Co.,* 14 *Del.Ch.* 117, 122 *A.* 142, and for the present, disposal of defendants' motion to dismiss on the ground that a labor dispute, in the federal sense, exists between the parties will be held in abeyance.

On notice, an order will be entered denying plaintiff's motion for a preliminary injunction.

---

8. In the case of *Weber v. Anheuser-Busch Inc.,* 348 *U.S.* 468, 75 *S.Ct.* 480, 486, 99 *L.Ed.* 546, the Court in referring to the *Allen-Bradley* case stated, "* * * the State was allowed to enjoin mass picketing, threats of bodily injury and property damage to employees, obstruction of streets and public roads, the blocking of entrance to and egress from a factory, and the picketing of employees' homes."