**EASTERN FINE PAPER, INC.**

v.

**GARRIGA TRADING CO., INC.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1982.

Decided March 17, 1983.

Eaton, Peabody, Bradford & Veague, Daniel E. McKay (orally), John E. McKay, Bangor, for plaintiff.

Paine & Lynch, Martha J. Harris (orally), Bangor, for defendant.

Before McKUSICK, C.J., and GODFREY, NICHOLS, ROBERTS, CARTER, and VIOLETTE, JJ.

GODFREY, Justice.

Defendant, Garriga Trading Company ("Garriga"), appeals from a declaratory judgment entered in Superior Court, Penobscot County. The only issue we need address is whether the Superior Court erred in

granting the declaratory judgment in view of the fact that when the Maine action was commenced, there was already pending in the United States District Court for the District of Puerto Rico an action between the same parties that would settle all the factual and legal issues presented in the Maine action. We vacate the judgment and remand with instructions to dismiss the action.[1]

Plaintiff, Eastern Fine Paper, Inc. ("Eastern"), is a manufacturer of paper products in Brewer, Maine; Garriga is an importer, distributor, and seller of paper products in Puerto Rico. Sometime in 1974, Garriga became a buyer of Eastern's products and a distributor for Eastern in Puerto Rico. During 1976 and early 1977, the volume of orders received by Eastern from Garriga dropped substantially. When Eastern complained, Garriga attributed the decline to non-competitive pricing by Eastern. Garriga, in turn, complained that Eastern was selling some of its paper products to another Puerto Rican paper distributor. Thereafter Eastern refused to sell exclusively to Garriga, and the two companies became embroiled in a dispute over whether the distributorship agreement was exclusive, whether it was terminable at will, and whether Eastern or Garriga had been in breach of it.

The parties could not resolve the dispute amicably. In June of 1979, Garriga commenced an action for damages and attorneys' fees against Eastern in federal district court in San Juan, alleging breach of contract and violation of Puerto Rico's Dealers Contract Law, Act No. 75 of 1964, P.R.Laws Ann. tit. 10, § 278, which provides in effect that a Puerto Rican dealer's contract with a manufacturer, regardless of any provision for termination, is renewable indefinitely at the option of the local dealer unless the manufacturer has "just cause" to terminate the arrangement. Eastern's answer in the Puerto Rican action included

affirmative defenses alleging that Act No. 75 is unconstitutional for various stated reasons and that Eastern had just cause to terminate the contractual relationship because of Garriga's non-performance of essential obligations. Eastern made no counterclaim.

At some point it was agreed between counsel for the two parties in Puerto Rico that the case there be stayed pending decision of a case or cases then pending before the Supreme Court of Puerto Rico involving the construction and constitutionality of Act No. 75. The date of the initial agreement for the stay does not appear in the record in the instant case, but the stay was certainly still operative when the Superior Court heard the present case.

In September of 1979, Eastern filed the present action pursuant to the Declaratory Judgments Act, 14 M.R.S.A. ch. 707 (§§ 5951–5963) (1980), seeking a declaration that (1) the rights and obligations of the contract are governed by Maine law; (2) the contract was terminable at will by either party; (3) Garriga's failure to market Eastern's products effectively constituted a breach of contract; and (4) Eastern had "just cause" to contract with others to sell its paper products in Puerto Rico within the meaning of Act No. 75.

Garriga moved to dismiss the action on several grounds, among others that the Superior Court should decline to exercise subject-matter jurisdiction because suit was already pending in Puerto Rico involving the same litigants and issues. The Superior Court denied the motion and later denied a motion, made on the same grounds, to stay the Maine action pending decision by the United States District Court in Puerto Rico. After a trial, the court granted Eastern substantially the declaratory relief it sought.

 Generally speaking, whether a declaratory judgment should be issued rests in the sound discretion of the trial court.

---

1. Garriga also contends that the Maine court had no personal jurisdiction over it. Because we need not decide that issue, we merely assume for purposes of this opinion that the court properly asserted personal jurisdiction over the defendant.

*Cape Elizabeth School Board v. Cape Elizabeth Teachers Association,* 435 A.2d 1381, 1383 (Me.1981). The discretion to be exercised is of a judicial nature, not arbitrary but based on good reason. W. Anderson, *Declaratory Judgments* § 172, at 525–26 (1940). In exercising that discretion, the trial court must decide whether the adjudication will serve some useful purpose. *Cape Elizabeth School Board,* 435 A.2d at 1383; E. Borchard, *Declaratory Judgments* 299 (2d ed. 1941). The considerations forming the basis for a trial court's decision that the granting of declaratory relief will serve a useful purpose are subject to review and evaluation on appeal.[2]

The record in the present case gives no clue to why the trial justice thought that a useful purpose would be achieved by granting the declaratory judgment. We must therefore resolve the question of the utility of that judgment by examining the facts revealed by the record. Having done so, we find that the judgment served no useful purpose and was improvidently granted in the circumstances.

The action already brought by Garriga in Puerto Rico involved exactly the same litigants; the issues presented in the Maine action had been raised by the pleadings in Puerto Rico. In effect, Eastern sought merely a declaratory judgment upholding its principal defense to that already pending suit. Ordinarily, when a party has begun an action, "it serves no sensible end to permit his adversary to appear as equitable actor and start the proceedings for an autonomous declaration that he has a good defense to his opponent's pending . . . ac-

tion." E. Borchard, *supra,* at 303. *See also Rego Industries, Inc. v. American Modern Metals Corp.,* 91 N.J.Super. 447, 221 A.2d 35 (1966); *Canadian Imperial Bank of Commerce v. Canada Life Assurance Co.,* 43 A.D.2d 920, 352 N.Y.S.2d 203, *appeal dismissed,* 34 N.Y.2d 959, 359 N.Y.S.2d 569, 316 N.E.2d 881 (1974).

Pendency of another action involving the same litigants and issues does not automatically require dismissal of a subsequently commenced action. *Howell v. Howell,* 418 A.2d 181 (Me.1980); *Fitch v. Whaples,* 220 A.2d 170 (Me.1966). Declaratory relief may be appropriate despite such a pending action if exceptional circumstances are alleged and proved, particularly if it is shown that denial of the relief would work injustice to plaintiff. *Redmond v. Matthies,* 149 Conn. 423, 428–29, 180 A.2d 639, 642 (1962); *Jacoby v. Babcock Artificial Kidney Center, Inc.,* 364 Mass. 561, 563–64, 307 N.E.2d 2, 4–5 (1974). However, Eastern did not allege or prove exceptional circumstances. It did not allege, for instance, that it would be unfairly treated in the federal forum in Puerto Rico or unable to assert its defenses there. It did not even assert or demonstrate that Puerto Rico and Maine have different choice-of-law rules governing the question of the applicability of the Puerto Rico statute. In fact, the trial court's adjudication that Eastern had "just cause" for terminating its arrangement with Garriga seems to imply that, in the court's view, the Puerto Rican statute was pertinent in determining Eastern's obligations under the arrangements with Garriga.[3]

---

2. Although the exercise of discretion by a trial court in granting or denying declaratory relief. is accorded deference on appeal, *King Resources Co. v. Environmental Improvement Comm'n,* 270 A.2d 863, 867–68 (Me.1970), the deference is less than that accorded to many other types of rulings; for example, to findings of historic fact based on testimony, or to discretionary rulings on admissibility of evidence. *Hanes Corp. v. Millard,* 531 F.2d 585, 591 (D.C. Cir.1976); *American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317, 320 (1st Cir.1974); E. Borchard, *supra,* at 293–94.

3. The implication is not wholly certain because the declaratory judgment does not explicitly state that the "just cause" deemed to excuse Eastern's termination of the contract is "just cause" within the meaning of Act No. 75. Eastern's complaint had asked for a declaration that it had just cause to contract with others for the sale of its products in Puerto Rico within the meaning of Act No. 75.

 It is not clear why Eastern wanted a declaration that "the rights and obligations of the parties under the contract are governed by

This case contains the usual factors indicating the desirability of abstention where a declaratory judgment is sought merely to validate plaintiff's defense to an already pending action with similar parties and issues: the waste of litigants' resources and the extra investment of judicial time and energy required to entertain duplicative suits. *American Home Assurance Co. v. Insular Underwriters Corp.,* 494 F.2d 317, 320 (1st Cir.1974). The case has none of the features that may in some circumstances justify entertaining such an action. No property in Maine is involved. The Maine court is not a more convenient forum, if the convenience of both parties is considered. The trial justice had no prior familiarity with the issues as a result of working on related litigation. *See American Fidelity Fire Insurance Co. v. Construcciones Werl, Inc.,* 70 F.R.D. 695 (D.V.I.1976). The case is not one in which the rights of the parties in the court of the forum would be unaffected by the other tribunal's adjudication,[4] or in which it appears desirable that the court of the forum settle a question of public concern by construing legislation of the forum state expressing an important social or economic policy. *See Developments in the Law—Declaratory Judgments—1941–1949,* 62 Harv.L.Rev. 787, 807–08 (1949).

On the contrary, there were clear warning signs that comity should have been accorded to the federal court in Puerto Rico and the action there permitted to run its course without the intrusion of a Maine declaratory judgment—no doubt to be introduced in the Puerto Rico action for its res judicata effect—upholding Eastern's defense.

In its answer to the complaint in Puerto Rico, Eastern attacked the constitutionality of Act No. 75. The Supreme Court of the United States had held in *Fornaris v. Ridge Tool Co.,* 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1971), that the federal courts should avoid passing on the constitutionality of Act No. 75 until the Supreme Court of Puerto Rico construed it.[5] The Court thought that the scope of the statute might be considerably narrowed by such construction, with the result that constitutional difficulties with the act could be reduced or avoided. The Supreme Court said:

Whether the Supreme Court of Puerto Rico would give the same broad sweep to 'just cause' as did the Court of Appeals is something we do not know. It is conceivable that 'just cause' might be judicially confined to a more narrow ambit which would avoid all constitutional questions. We therefore reverse and direct the Court of Appeals to remand the cases to the District Court with instructions to hold its hand until the Puerto Rican Supreme Court has authoritatively ruled on the local law question in light of the federal claims. See *England v. Medical Examiners,* 375 U.S. 411, 420 [84 S.Ct. 461, 467, 11 L.Ed.2d 440].

400 U.S. at 44, 91 S.Ct. at 158 (footnote omitted).

The Court of Appeals for the First Circuit has followed the admonition in *Fornaris,* staying appeals[6] and vacating a judgment of the United States District Court for the District of Puerto Rico when that court was deemed to have decided a case improvidently on the basis of its own construction of certain Puerto Rican civil service statutes. *Diaz Gonzalez v. Colon Gonzalez,* 536 F.2d 453 (1st Cir.1976).[7] In

---

Maine law" when it was also asking for a determination of "just cause" within the meaning of the Puerto Rican act.

**4.** *See Piasecki Aircraft Corp. v. International Union, U.A.A.A.I.W.,* 36 Del.Ch. 317, 129 A.2d 663 (Del.Ch.1957); Annot., 56 A.L.R.2d 343, § 5(c) (1957).

**5.** *See also Bonet v. Texas Co.,* 308 U.S. 463, 60 S.Ct. 349, 84 L.Ed. 401 (1940).

**6.** *See American Home Assurance Co.,* 494 F.2d at 318.

**7.** More recently, however, the First Circuit has affirmed a judgment of the federal court in Puerto Rico construing and applying the "just cause" provision of Act 75 even though the parties had agreed that there was little, if any,

*American Home Assurance Co.,* 494 F.2d 317, the First Circuit upheld a decision of the federal court in Puerto Rico refusing to grant declaratory relief to a mainland insurance company while an Act–75 suit against the company by its Puerto Rican general agents was pending in the Superior Court of Puerto Rico.[8]

When the Maine Superior Court was presented with Garriga's motion to dismiss in the instant case, nothing in the record gave the court reason to believe Puerto Rican courts had yet ruled on the applicability of Act No. 75 to a situation like that of Garriga and Eastern. A Puerto Rican case drawn to the Superior Court's attention, *Walborg Corp. v. Tribunal Superior,* 104 D.P.R. 184 (1975), revealed that Act No. 75 was deemed by the Supreme Court of Puerto Rico to express a policy considered fundamental by the Legislature of Puerto Rico.[9] *Walborg* had gone so far as to hold that an arbitration clause in a dealership contract could not be enforced because it served as a mechanism to evade the application of Act No. 75.[10]

By the time the Superior Court heard the present case, the Supreme Court of Puerto Rico had handed down several decisions construing Act No. 75. *E.g., Warner Lambert Co. v. Superior Court,* 101 D.P.R. 378 (1973) (limiting application of Act 75 to contracts made after its enactment); *Juan Mercantile Corp. v. Canadian Transport Co.,* 108 D.P.R. 211 (1978) (limiting application of Act 75 to dealers who had actually created a favorable market and secured a clientele for the manufacturer's product or service by their activities); *J. Soler Motors, Inc. v. Kaiser Jeep International Corp.,* 108 D.P.R. 134 (1978) (Act No. 75 not limited to exclusive dealerships or to dealerships that cover all of Puerto Rico); *Goble & Jimenez, Inc. v. Dore Rice Mill, Inc.,* 108 D.P.R. 89 (1978) (stating the requirements for an effective novation in order to determine whether a dealer's contract was made before or after the enactment of Act 75).

In short, when the Maine court heard the present case, it knew that the applicability of Act No. 75 involved politically sensitive issues, that the law under the act was in a process of rapid development by the Supreme Court of Puerto Rico, and that the federal courts were carefully avoiding any preemption of that process that might lead to unnecessary constitutional complications. In that state of affairs, it was an improvident exercise of discretion for the Superior Court to entertain Eastern's declaratory judgment action. The Supreme Court's admonition in *Fornaris* is probably not binding on state courts, to be sure, but a due regard for comity should have cautioned the Maine court not to hear and determine this action when the federal court in Puerto Rico, with the consent of Puerto Rico coun-

judicial precedent construing the meaning of "just cause" under the act. *La Playa Santa Marina, Inc. v. Chris-Craft Corp.,* 597 F.2d 1 (1st Cir.1979).

**8.** *Cf. Pagan Torres v. Negron Ramos,* 578 F.2d 11 (1st Cir.), *cert. denied,* 439 U.S. 1005, 99 S.Ct. 619, 58 L.Ed.2d 682 (1978) (upholding a three-judge district court decision adopting the response of the Supreme Court of Puerto Rico to a certified question of law).

**9.** In the Statement of Motives of Act No. 75, it is said,

> The Commonwealth of Puerto Rico can not remain indifferent to the growing number of cases in which domestic and foreign enterprises, without just cause, eliminate their dealers, or without fully eliminating them, such enterprises gradually reduce and impair the extent of their previously established re-

lationships, as soon as these dealers, concessionaires or agents have created a favorable market and without taking into account their legitimate interests.

> The Legislative Assembly of Puerto Rico declares that the reasonable stability in the dealer's relationship in Puerto Rico is vital to the general economy of the country, to the public interest and to the general welfare, and in the exercise of its police power, it deems it necessary to regulate, insofar as pertinent, the field of said relationship, so as to avoid the abuse caused by certain practices.

**10.** *But cf. Ledee v. Ceramiche Ragno,* 684 F.2d 184 (1st Cir.1982) (applying the Federal Arbitration Act under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards despite the *Walborg* decision).

**1116** ■■■■■■■■■■■■■■■■

sel for both parties, had stayed its own proceedings in deference to the Supreme Court's concerns expressed in *Fornaris*.

Eastern has suggested that the delay in progress of the suit in Puerto Rico justified the Maine court in proceeding with the declaratory judgment action. Nothing in the record indicates that Eastern was sustaining any substantial injury as a result of that delay. It was party defendant in Puerto Rico and had not asserted any counterclaim there. Eastern did not show that the delay there threatened to be more injurious to Eastern itself than to Garriga. Moreover, Eastern's own counsel in Puerto Rico had acquiesced steadily in extensions of the stay of the federal court action. The Superior Court should have abstained from deciding the case, and its judgment must be vacated.

It remains to be determined whether to remand the case for dismissal of the action or for issuance of an order staying further proceedings. While either dismissal or stay would have been appropriate when the case first came under consideration by the Superior Court, we think the action should now be dismissed. Eastern is defendant in the action in the federal court in Puerto Rico; it made no counterclaim in that action. Nothing in the record suggests that it will be injured by further delay in the progress of that litigation. Nothing appears to be gained by keeping the instant suit alive any longer, and it should be dismissed. However, to ensure that the dismissal will have no res judicata effect on the action in the United States District Court for the District of Puerto Rico, the judgment of dismissal should be entered expressly without prejudice.

The entry is:

Judgment vacated.

Remanded with instructions to dismiss the complaint without prejudice.

All concurring.