STATE OF MAINE                          SUPERIOR COURT
CUMBERLAND, ss.                         CIVIL ACTION
                                        DOCKET NO: CV06-592

KELLY, REMMEL & ZIMMERMAN

        Plaintiff

                                   ORDER ON DEFENDANTS'
                                   MOTION TO DISQUALIFY and
                                   PLAINTIFF'S MOTION TO
                                   DISMISS COUNTERCLAIM
    v.

NICHOLAS WALSH, et al.

        Defendants

DONALD L. GARBRECHT
LAW LIBRARY

AUG 02 2007

This case comes before the Court on Defendants' motion to disqualify and

Plaintiff's motion to dismiss counterclaim.

## BACKGROUND

Plaintiff Kelly, Remmel & Zimmerman ("KRZ") is a Maine professional

association doing business as a law firm in Portland, Maine. Defendant Nicholas

Walsh ("Walsh") is also a Portland attorney doing business as a professional

association, Nicholas Walsh, P.A., of which he is the sole member. Walsh

occasionally referred maritime personal injury cases to Terrance Duddy

("Duddy"), an attorney at KRZ, and he and Duddy would divide the fees in

those cases. One such referral occurred in 2000, when Walsh referred Bruce

Falconer ("Falconer"), who had been injured in a maritime accident, to Duddy

and KRZ. Although Falconer never signed a representation agreement with

1

Duddy, the attorneys had agreed that Walsh would remain active in the case and would receive 40% of any fee obtained by Duddy, who would receive 60%.[1]

Falconer executed releases so that KRZ could obtain his medical and Coast Guard investigation records. When he received them, Duddy shared the records with Walsh. In May 2001, Falconer's employer apparently made a settlement offer, which Duddy offered to review for him, although there was still no formal representation or fee agreement between Falconer and Duddy. At that time, Walsh had not obtained a signed fee agreement either, and he requested that Duddy let him "take the lead in contacting the client." Falconer did not contact Duddy about the settlement offer. Duddy eventually wrote a letter to Walsh, asking for reimbursement of his costs and hours billed if Falconer prevailed. Ultimately, Falconer signed a fee agreement with Walsh and rejected his employer's settlement offer. At that point, Walsh sought assistance from a Massachusetts litigation firm, Latti & Anderson. Walsh later informed Duddy that, as the Massachusetts firm was handling Falconer's case, he (Walsh) would only earn a small referral fee. Falconer obtained a $3.2 million jury verdict in his favor in November 2005.

In October 2006, KRZ filed suit against Walsh individually and as a professional association, alleging breach of contract, negligent misrepresentation, fraud, breach of fiduciary duty, interference with economic advantage, punitive damages, and quantum meruit. Walsh raised the following affirmative defenses: lack of consideration, lack of client consent under the Bar Rules, unclean hands,

---

[1] KRZ characterizes this as a binding contract. Walsh characterizes it as an agreement with a condition precedent –Falconer's formal agreement to Duddy's representation – before the fee sharing agreement could become effective per M. Bar R. 3.3(d)(1). Falconer never signed a contract with Duddy.

2

estoppel, novation, illegality under public policy, and lack of specificity in the fraud allegation, among others. Walsh also counterclaimed for a declaratory judgment that his fee agreement with Duddy was subject to the Maine Code of Professional Responsibility, the attorney's oath, and the duty of loyalty, and that KRZ has no legal right to a fee because the client did not consent to Duddy's representation. KRZ moved to dismiss the counterclaim as duplicative of issues that Walsh raised as affirmative defenses.

Additionally, Walsh moved to disqualify KRZ's counsel. Duddy spoke with Jack Simmons, Esq. about representing him and KRZ in this matter, and Simmons agreed to take the case in November 2005. That same month, Walsh contacted William Robitzek, Esq., also an attorney with Berman & Simmons, to discuss the lawsuit. Walsh states that he exchanged e-mails and had a telephone conversation with Robitzek about the case and contends that, at Robitzek's invitation, he also sent confidential material to him to assist in evaluation of the case. Walsh, therefore, believed that Robitzek represented him. When Robitzek learned of the conflict of interest, he apologized and his secretary returned the materials to Walsh. He characterizes the e-mails as an informal evaluation and argues that he did not interpret them to mean that Walsh wanted formal representation. Berman & Simmons claims that the correspondence between Walsh and Robitzek never rose to the level of an attorney-client relationship and that, even if it did, Walsh waived the conflict by waiting to raise the issue for almost a year.

## DISCUSSION

1.    <u>Should Berman & Simmons Be Disqualified?</u>

Attorney conduct is governed by the Maine Bar Rules. The Bar Rules are enforced by the Maine Supreme Judicial Court, which has supervisory power over attorneys. *Casco Northern Bank v. JBI Assocs.*, 667 A.2d 856, 859 (Me. 1995) (*quoting Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530 (D. Kan. 1992)). A party moving to disqualify an attorney has the burden to demonstrate more than "'mere speculation'" that an ethics violation has occurred, but "doubts should be resolved in favor of disqualification." *Id.* at 859. The court, however, must ensure that motions to compel disqualification are not used to gain a merely tactical advantage. *Id.*

A conflict of interest occurs where "there is a substantial risk that the lawyer's representation of one client would be materially and adversely affected by the lawyer's duties to another current client, to a former client, or to a third person, or by the lawyer's own interests." M. Bar R. 3.4(b)(1). There is no doubt that if Walsh was indeed Robitzek's client or prospective client, the resulting conflict would require the firm's disqualification. The crucial question, then, is whether it was reasonable for Walsh to believe that Robitzek represented him.

Representation is deemed to have commenced "when the lawyer and the client, by conduct or communication, would each reasonably understand and agree that representation commences," and this is "judged by an objective, not a subjective, standard." M. Bar. R. 3.4(a)(2). Additionally, the attorney is responsible for "clarify[ing] whether representation has commenced." *Id.* When an attorney does not specify that representation has not begun, but the client

4

reasonably believes that it has, representation has begun. *Id.* An attorney-client relationship exists when:

> (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance.

*Board of Bar Overseers v. Mangan,* 2001 ME 7, ¶ 9, 763 A.2d 1189, 1192-1193 (citations omitted). In *Mangan,* the client had settled her personal injury case for an amount insufficient to pay her medical bills. *Id.* ¶ 2, 763 A.2d at 1191. She consulted the attorney for help negotiating with her treatment providers, and he helped her without a formal fee agreement. *Id.* The Court held that an attorney-client relationship existed because the client had "sought advice or assistance" that the attorney was competent to render, and he did in fact assist her. *Id.* ¶ 10, 763 A.2d at 1193.

Here, Walsh e-mailed Robitzek on November 4, 2005 to ask for a "solid evaluation" of his position in the dispute, ending the message with the question, "Can you help me out?" Robitzek replied on November 6, saying that he would "be glad to help" and that he was willing to either meet with Walsh or "review docs." In addition, he stated in his e-mail that "[t]he client's agreement to the fee is essential to [T]erry's claim." Robitzek ended the message by telling Walsh to call him.[2] On November 7, Walsh responded that he would send documents, including letters and e-mails, and he mailed those documents to Robitzek's office. Robitzek contends that by the time Walsh's documents reached him, he

---

[2] There is some dispute about whether Robitzek and Walsh actually spoke on November 7. Walsh maintains that they did speak about the case, including a discussion of some privileged information; Robitzek states that he does not recall such a conversation, and that he was involved in jury selection at the time of the alleged call. Berman & Simmons' telephone records do not show that Robitzek called Walsh.

5

was aware of the conflict and did not review them, although the envelope had been opened. He promptly returned the documents, and Walsh did not hear anything further until Simmons contacted him to attempt negotiation before filing suit. He did not raise the conflict issue until litigation began.[3]

Applying the *Mangan* test, Walsh sought assistance from Robitzek in an area in which Robitzek is competent, which he describes as his "referral practice." Robitzek agreed by stating that he would be "glad to help," and he went so far as to make a comment that objectively appears to be legal advice about what would be "essential" to a claim against Walsh. Despite Robitzek's assertion that he commonly evaluates issues for attorney colleagues without officially representing them, it seems objectively reasonable that Robitzek assumed he would be providing legal services, as he offered to review documents for Walsh and/or meet with him to discuss the case. It also was objectively reasonable for Walsh to believe that an attorney-client relationship existed, given the language of Robitzek's November 6 e-mail.

If such a relationship did not exist, under the Bar Rules, it was Robitzek's burden to clarify that a formal relationship had not commenced. The Rule provides no exception for a client who, like Walsh, is also an attorney. Although Robitzek contends that he never acquired confidential information, the Court need not reach that issue because these matters are not substantially the same – they are exactly the same. Representation of opposing parties in the same or substantially related matters is strictly prohibited by the Bar Rules. M. Bar R.

---

[3] Berman & Simmons contend that Walsh waived the right to raise the conflict by waiting until October 2006 to address the issue. However, one does not waive one's right to make an argument before formal litigation has commenced. Because Walsh was not certain that a lawsuit actually would be filed, and it was not filed until October 2006, he did not forfeit his right to raise the conflict issue by waiting until litigation began to address it.

6

3.4(c)(1). As all of the attorneys involved in this case have excellent reputations as highly capable practitioners with integrity, this Court does credit their representations that no misconduct occurred.[4] Nevertheless, the brief existence of an attorney-client relationship that gave rise to a conflict of interest requires Berman & Simmons' withdrawal from this matter, as doubts are "resolved in favor of disqualification." *See Casco Northern Bank*, 667 A.2d at 859; *Cox v. Ryan d/b/a Elements of Style*, ALFSC-AP-2006-041 (Me. Super. Ct., Yor. Cty., Nov. 30, 2006) (Brennan. J.). Walsh's motion to disqualify is granted.

2.    Should Walsh's Counterclaim Be Dismissed?

A motion to dismiss "tests the legal sufficiency of the complaint." *Livonia v. Town of Rome*, 1998 ME 39, ¶ 5, 707 A.2d 83, 85. Because the Court reviews the complaint in the light most favorable to the plaintiff to ascertain whether it properly sets forth elements of a cause of action, "the material allegations of the complaint must be taken as admitted." *Id.* ¶ 5, 707 A.2d at 85. The Court should dismiss a claim only "when it appears 'beyond doubt that [the] plaintiff is entitled to no relief under any set of facts that [it] might prove in support of [its] claim.'" *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994) (quoting *Hall v. Bd. of Envtl. Protection*, 498 A.2d 260, 266 (Me. 1985)).

In his counterclaim, Walsh seeks a declaratory judgment regarding the applicability of the Maine Code of Professional Responsibility, the attorney oath, and the duty of loyalty, as well as a declaration that KRZ is not entitled to a fee. An interested party may seek a declaratory judgment from this Court to decide "any question of construction or validity" of a contract or law. 14 M.R.S.A. § 5944 (2006). When considering a claim for declaratory relief, a court "should

_____

[4] This Court also explicitly finds that Walsh is not misusing this motion as a litigation tactic.

construe the declaratory judgment statute liberally." *Waterville Indus. v. Fin. Auth. of Me.*, 2000 ME 138, ¶ 25, 758 A.2d 986, 993.

KRZ contends that Walsh's counterclaim must be dismissed because it duplicates issues that Walsh raised as affirmative defenses. It points to a case in which the Law Court vacated a declaratory judgment and ordered dismissal of the case because a lawsuit between the same parties involving the same subject matter had already been commenced in United States District Court in Puerto Rico. *Eastern Fine Paper, Inc. v. Garriga Trading Co., Inc.*, 457 A.2d 1111, 1112 (Me. 1983). KRZ argues that the same concerns are present here, as the issues in Walsh's counterclaim necessarily will be determined in the underlying lawsuit.

Duplication of issues, however, is not the standard this Court must use to determine whether Walsh set forth a "legally sufficient" claim for declaratory relief that would survive a motion to dismiss. Viewing the counterclaim in the light most favorably to Walsh, he has sufficiently raised the issue of his entitlement to a declaratory judgment regarding professional responsibility and contractual issues that are material to the underlying breach claim. This is not a situation where identical claims are pending in different courts, as was the case in *Eastern Fine Paper*. Instead, the relief Walsh seeks is relevant to and may impact the lawsuit filed by KRZ. Accordingly, the motion to dismiss his counterclaim is denied.

The entry is:

Defendants' motion to disqualify is GRANTED. Plaintiff is instructed to obtain alternate counsel as soon as possible. Plaintiff's motion to dismiss counterclaim is DENIED.

The clerk shall incorporate this Order into the docket by reference pursuant to M.R. Civ. P. 79(a).

8

DATE: _April 13, 2007_

___Roland A. Cole___
Roland A. Cole
Justice, Superior Court

F COURTS
nd County
ox 287
ne 04112-0287

STEVEN SILIN ESQ
PO BOX 961
LEWISTON ME 04243

)F COURTS
land County
Box 287
ine 04112-0287

PHILIP JOHNSON ESQ
PO BOX 79
AUGUSTA ME 04332

F COURTS
nd County
ox 287
ne 04112-0287